JOAN K. RILEY, APPELLEE, V. NATIONAL AUTO INSURANCE COMPANY, A CORPORATION, APPELLANT.

77 N. W. 2d 241

Filed May 25, 1956. No. 33932.

*Ginsburg, Rosenberg & Ginsburg* and *Joseph V. Benesch,* for appellant

*Kelley, Grant & Knowles* and *John F. MacKenzie,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action on an automobile-collision policy to recover damages to the insured vehicle resulting from an accident while it was being operated by plaintiff's husband. The verdict and judgment were for the plaintiff in the amount of $3,400. The defendant appeals.

On July 13, 1953, plaintiff procured a policy of insurance from the defendant company which covered and insured a certain 1953 model Jaguar automobile owned by the plaintiff. She alleged that on August 8, 1953, the automobile was being operated by her husband, with her permission, and became involved in a collision. It was claimed that the automobile was damaged to such an extent that it was beyond repair. The value of the automobile before the collision was alleged to have been $4,000 and the value thereafter, $500. Plaintiff prayed for judgment in the amount of $3,500.

The defendant by its answer admitted the execution and delivery of the automobile insurance policy. It alleged further that plaintiff's husband had a pecuniary interest in the insured automobile which would inure to his direct benefit, that there was no accident within the meaning of the insurance contract, and that the loss and damage to the automobile is not within the insuring provisions of the policy.

By her reply the plaintiff alleged that defendant is estopped to assert the foregoing defenses and has waived them by investigating the claim, by entering into negotiations with the plaintiff, by taking possession of the automobile, and by denying liability on the claim.

The evidence shows that on August 8, 1953, Riley drove the automobile from his home to his place of employment in Omaha. After his working hours, and about 1 p. m. of said day, he drove to a tavern where he engaged in the drinking of intoxicating liquors until about 7 p. m. He then drove the automobile to Onawa, Iowa, arriving there about 9 p. m. He engaged in drinking intoxicating liquors until some time after midnight, when he entered his car and with deliberation set out to violate traffic rules and regulations to attract the attention of the police. He was successful in his efforts and the police gave chase. He drove out of town at a high rate of speed, eluded the police, and returned to Onawa to further entice the police into pursuing him.

The police again gave chase, and while the pursuit was in progress plaintiff's husband had a series of mishaps. The evidence shows he struck the curb of the street several times, that he sideswiped a parked car, that he struck and knocked down some road signs near the post office, drove head-on into the foundation of a church, and otherwise damaged the automobile until it would not operate. The police shot at the automobile a number of times and two bullet holes were found in the body of the car. Plaintiff's husband was arrested and convicted of drunken driving as a result of this episode.

The automobile was removed to a garage in Onawa. Plaintiff subsequently caused it to be removed to Blair, Nebraska, and it was subsequently taken to Loyal's garage in Omaha at her direction. The car was later removed to the DeLuxe Body Company, where it was repaired. There is a dispute in the evidence as to the person who directed the removal of the car to the DeLuxe Body Company for repairs, but it is clear that both the plaintiff and defendant knew that it had been taken there for that purpose. There is evidence in the record that it cost $919.82 to repair the car and that it was in substantially the same condition after it was repaired as before the accident. There is evidence in the record that the automobile was worth from $500 to $1,500 after the alleged accident. There is undisputed evidence that the car had depreciated in value to the extent of $500 after the purchase of the car and before the accident. Interest was allowed on the judgment from the date of the accident. Defendant asserts this was error. The trial court allowed attorney's fees to the plaintiff which the defendant alleges as error. Certain instructions to the jury are alleged to be erroneous and complaint is made that defendant's counsel was unduly restricted by the court in presenting the case to the jury.

The evidence will not sustain a finding that John Riley had such an interest in the automobile as would

defeat plaintiff's claim under the provision providing that: "The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile."

The insuring agreements of the policy include the following coverage for collision or upset: "Direct and accidental loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile." It is the contention of the defendant that, although the result was accidental in the sense that it was unintentional, it was not caused by accidental means within the purview of the foregoing policy provision. It is argued by the defendant that plaintiff's husband embarked upon a plan or scheme of becoming drunk and disorderly, and engaged thereafter in a plan or scheme of conduct to drive the motor vehicle in an unlawful manner. While so engaged, the automobile was damaged while Riley was attempting to escape arrest. This, the defendant asserts, is not injury or damage sustained as the result of any direct and accidental loss or damage to the vehicle by collision within the coverage of the policy.

The evidence is clear that plaintiff's husband was drunk when he left Omaha for Onawa, and that he continued to drink intoxicating liquors thereafter. That he was intoxicated during the time the events herein recited took place and until his arrest by the Onawa police is sustained by the record. There is no contention made that plaintiff was negligent in permitting her husband to use the car. The drinking by her husband and the occurrences at Onawa were without any connivance or knowledge on the part of the plaintiff. While it is true that plaintiff's husband became drunk and drove the car while in that condition, the damaging of the car was not intentional. Although plaintiff's husband intentionally drove plaintiff's car while he was intoxicated, there is no evidence that he did the recited acts deliberately, even though it is clear that

they were the result of negligence. The results of the conduct of her husband were not the natural and probable consequences of the act of plaintiff in entrusting the use of the automobile to him. As to the plaintiff, the consequences were not the result of design, could not have been reasonably anticipated, were unexpected, and were produced by an unusual combination of fortuitous circumstances. It was therefore a damage produced by and was the result of accident.

· In Terrien v. Pawtucket Mutual Fire Ins. Co., 96 N. H. 182, 71 A. 2d 742, in discussing the term "accidental loss," it was said: "While it could be found that the plaintiff's action in driving his truck over the holes was deliberate, he was not so far chargeable with knowledge that the resulting breakdown was probable, as to require a finding that he deliberately incurred the loss. The collapse of the truck could be found to be an untoward, unusual and unexpected event. What happened was well within the meaning attributed to the word 'accidental' as commonly understood. * * * The loss which occurred to the plaintiff's automobile on July 13 was 'an accidental loss' within the meaning of the policy, which contained no exclusion of loss due to negligent or intentional acts of the insured."

The term "accident" was discussed in American Accident Co. of Louisville v. Carson, 99 Ky. 441, 36 S. W. 169, 34 L. R. A. 301, 59 Am. S. R. 473, as follows: "While our preconceived notions of the term 'accident' would hardly lead us to speak of the intentional killing of a person as an 'accidental' killing, yet no doubt can now remain, in view of the precedents established by all the courts that the word 'intentional' refers alone to the person inflicting the injury, and if as to the person injured the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight or was a casualty or mishap not intended to befall him, then the occurrence was acci-

dental, and the injury one inflicted by accidental means within the meaning of such policies."

This court determined the meaning of the word "accident" as follows: "An accident, within the meaning of contracts of the kind here considered, includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby." Railway Officials & Employes Accident Assn. v. Drummond, 56 Neb. 235, 76 N. W. 562. See, also, Cutrell v. John Hancock Mutual Life Ins. Co., 145 Neb. 550, 17 N. W. 2d 465.

Applying these principles to the case at bar, we hold that the episode herein related was an accident as to the plaintiff within the meaning of the policy. The events which followed the permissive use of the car by her husband were not reasonably to be anticipated, were unexpected, and were produced by an unusual combination of fortuitous circumstances. While it might be said that Riley intentionally drove the car while he was intoxicated, it does not follow that the accident was intentional from the fact of intoxication alone. We think the insured automobile suffered damage as a result of accident within the insuring provisions of the policy.

The defendant contends that the payee named in a loss-payable clause is an indispensable party to an action on the policy. Such payee is a proper but not an indispensable party. The record does not show that this question was ever raised by demurrer or answer. We think the alleged defect of parties was waived as provided by section 25-808, R. R. S. 1943. See, also, Cunningham v. Brewer, on rehearing, 144 Neb. 218, 16 N. W. 2d 533.

The policy contained an endorsement containing the following language: "It is understood and agreed that the Actual Cash Value shall not exceed the average 'as is' price published by the current N.A.D.A. Official Used Car Guide Book." The evidence shows that the current National Automobile Dealers Association official

used car guide book did not list the value of 1953 model Jaguar automobiles. Defendant offered in evidence the October 1953 guide book and the trial court sustained objections thereto. Defendant's claim of error on this ruling is without merit. No such used-car price being in existence at the time the provision was placed in the contract, it was a vain attempt to limit liability under the policy.

The defendant urges that the trial court erred in holding that there was but one collision and that the total deductible amount from any sum awarded the plaintiff was $100. The applicable provision of the policy provides coverage for collision and upset as follows: "Actual cash value less $100.00 which deductible amount shall be applicable to each collision or upset." The series of events which produced the damage to the insured vehicle in the present case constitutes but one accident within the meaning of the foregoing provision. While the automobile actually struck more than one object and, technically, was involved in more than one collision, the intent of the provision is that the insured shall have coverage over and above $100 on each accident, whether collision or upset. It does not contemplate that $100 shall be deducted for each contact made with other objects while an accident is taking place. The meaning of the provision is that $100 is deductible for each collision or upset for which a cause of action arises. Here there is but one claim, one cause of action, and one deduction of $100. The trial court did not err in so holding.

It is the contention of defendant that the trial court failed to properly instruct the jury as to the measure of damages. On the question of damages the court instructed the jury as follows: "In assessing the amount of the plaintiff's recovery, you will allow her the difference between the fair and reasonable cash value of her automobile immediately before the accident and collision, and the fair and reasonable cash value of her automo-

bile immediately after the accident and collision less $100.00."

With reference to the limit of liability by the company, the policy provides: "The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

Under this provision the company had the right (1) to repair the automobile if it could be repaired and placed in substantially the same condition as before, or to wholly replace it; (2) pay the loss in money; or (3) if a total loss resulted, to pay not to exceed the actual cash value of the automobile. There is evidence in the record that the automobile had been repaired for the sum of $919.82 and that it was in good running condition. The jury should have been permitted an opportunity to find that the automobile could have been repaired and placed in substantially the same condition as before. If the jury found that the automobile could not be repaired and placed in substantially the same condition as before the accident, and that the loss was total, it should have been instructed to allow plaintiff the difference between the actual cash value of the automobile before and after the accident, less the $100 deductible amount provided for in the policy. It is error for the trial court to submit the case to the

jury on the sole theory that the automobile was a total loss when there is evidence in the record that it could be repaired and placed in substantially the same condition as it was before the accident. It is for the jury to determine under the evidence whether the automobile could be repaired and placed in substantially the same condition as before and, if so, to determine the damages on that basis under proper instructions. If the jury finds that the automobile could not be repaired, it should determine the actual cash value of the automobile before and after the accident as provided by the policy. The rule is: "A jury should be fully and fairly informed as to the various items of damages which it should take into consideration in arriving at its verdict. In this respect it is the duty of the trial court to instruct as to the proper basis upon which damages are to be assessed for each such item." Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643. See, also, Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265. The instruction on damages was insufficient in that it failed to advise the jury as to the proper method of assessing the damages under the provisions of the policy and the other evidence adduced on the subject. The error is prejudicial to the rights of the defendant.

The defendant contends the judgment is excessive under the evidence. In this respect the evidence shows that the automobile cost $4,277 when it was purchased by plaintiff on or about July 13, 1953. The evidence is undisputed that it depreciated in the amount of $500 before the accident. The evidence shows that the cash value of the automobile after the accident was from $500 to $1,500. The policy provided for a deduction of $100. Accepting the minimum cash value of the automobile after the accident as $500, a judgment in excess of $3,177 would exceed any amount which the evidence will support under the instructions as given by the court. The judgment is clearly excessive.

The defendant complains of the action of the trial

court in limiting the argument of its counsel in presenting its case to the jury. The record shows that the trial court refused to permit defendant's counsel to allude to the insuring provisions of the policy. We point out that the action was brought on the insurance policy. Its provisions prescribed the liability assumed by the defendant. It was error for the trial court to refuse defendant's counsel the right to refer to the insuring provisions of the insurance policy, it having been properly received in evidence. Other limitations upon the defendant's argument to the jury relate to the repair and subsequent condition of the automobile. Upon proper instructions as to the measure of damages, such argument is entirely proper. In view of the necessity for a retrial of the case under proper instructions as to the measure of damages, the claimed error is not likely to occur again and we shall therefore devote no further attention to it.

The verdict of the jury awarded interest on the amount recovered from the date of the accident on August 8, 1953. The rule is stated in National Fire Ins. Co. v. Evertson, 157 Neb. 540, 60 N. W. 2d 638, as follows: "Recovery of interest on an unliquidated claim, the subject of reasonable controversy, and incapable of being fixed by computation, may be had only from the date of the determination of the right of recovery and the ascertainment of the amount." The present case is within this rule and interest may be recovered only from the date a judgment is rendered.

The defendant complains of the action of the trial court in allowing plaintiff's counsel an attorney's fee. Plaintiff contends that such fees are allowable as costs under section 44-359, R. R. S. 1943. The contract of insurance sued upon in this case is an indemnity policy and as such it is not within the cited section of the statute. This was fully discussed in Borden v. General Ins. Co., 157 Neb. 98, 59 N. W. 2d 141. See, also, Ehlers

v. Campbell, 159 Neb. 328, 66 N. W. 2d 585. It was error to allow an attorney's fee in this type of case.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.