THOMAS J. SULLIVAN, APPELLEE, V.
GREAT PLAINS INSURANCE COMPANY,
AN INSURANCE CORPORATION, APPELLANT.

317 N.W.2d 375

Filed March 19, 1982.   No. 43890.

Jeffrey A. Silver for appellant.

Kelley, Wallace, Scritsmier, Moore, Romatzke & Byrne, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Great Plains Insurance Company (Great Plains), appeals from a declaratory judgment entered by the District Court for Lincoln County, Nebraska, finding Great Plains liable to Thomas J. Sullivan (Sullivan) for damages to an automobile owned by Sullivan and a power pole owned by Nebraska Public Power District (NPPD) and damaged by

Sullivan, under the terms of a certain automobile policy issued by Great Plains to Sullivan. We affirm.

At the time of the accident in question, Sullivan was a 20-year-old resident of North Platte, Nebraska, and employed as an electrician's helper at the Gerald Gentleman Power Plant south of Sutherland, Nebraska. He owned a 1974 Pontiac automobile which he had insured with Great Plains under its standard automobile policy which included, among its coverages, liability coverage and collision coverage. Specifically, the policy provided with regard to liability coverage as follows: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile . . . ." The policy further contained several exclusions, one of which read as follows: "This policy does not apply: . . . (e) to bodily injury or property damage caused intentionally by or at the direction of the insured . . . ."

The collision coverage provided as follows: "The company will pay for loss caused by collision to the owned automobile but only for the amount of each such loss in excess of the deductible amount stated in the declaration as applicable hereto." The policy defined "collision" to mean "collision of an automobile covered by this policy with another object or with a vehicle to which it is attached or upset of such automobile." The policy defined "loss" to mean "direct and accidental loss of or damage to (a) the automobile, including its equipment."

The accident in question for which damages were sought by Sullivan from Great Plains occurred along Highway 25 south of Sutherland, Nebraska, on February 4, 1977. Sullivan's vehicle was observed northbound on Highway 25 by a member of the Nebraska State Patrol who was on aerial patrol at the time. Sullivan was clocked from the air at speeds of

105 miles per hour.

Two other state patrolmen were occupying two patrol vehicles parked along Highway 25 and were conducting a traffic check. As Sullivan's vehicle approached the location of the State Patrol traffic check, his vehicle slowed and proceeded through the traffic area check by driving in the southbound lane. From that location the Sullivan vehicle proceeded in an easterly direction on Highway 25 to a point where Highway 25 makes an abrupt turn at the crest of a hill from straight east to straight north. At that point Sullivan's vehicle left the road, went through a ditch, up an embankment, struck the NPPD power pole, and stopped in a pasture adjacent to Highway 25.

One of the two patrolmen conducting the traffic check drove immediately to the scene of the accident, arriving approximately 60 seconds after the accident had occurred, and found Sullivan's vehicle coming back onto the highway where it accelerated, spun around, and ended up in the ditch along Highway 25. Sullivan then got out of the vehicle and started running to the north along Highway 25 where he was contacted by the patrolman and placed into custody. At the time of his arrest he was hysterical and crying. Sullivan was thereafter charged with speeding and willful reckless driving. He pled not guilty to both charges and, apparently at the direction of the county court, was admitted to Mount Airy Hospital in Denver, Colorado.

The evidence discloses that Sullivan apparently had been suffering some mental difficulties for some time and had earlier been diagnosed as a paranoid schizophrenic with symptoms including paranoia, feelings that people were talking about him, and suspicious, defensive, and guarded behavior. The evidence further discloses that apparently all of this information was made known to Great Plains before the policy was issued, by a letter from the treating physician to Great Plains.

While still in treatment, Sullivan pled guilty by waiver to the charge of reckless driving and the speeding charge was dismissed.

Great Plains denied coverage for the damage to both the NPPD power pole and the Sullivan automobile on the basis that the damage to the power pole was the result of an intentional act by Sullivan, and therefore excluded from the liability coverage within the meaning of the policy, and the damage to the automobile was not a "loss" because it was not "accidental." Sullivan then filed the instant declaratory judgment action seeking a declaration that the various losses were covered by the Great Plains policy.

Turning first to the matter of the property damage and the liability coverage, we believe that Great Plains is in error in contending that the damage to the pole was not covered because it was an intentional act by Sullivan and therefore excluded from the coverage of the policy. While we have never directly passed upon this question of intention with regard to property damage under a liability coverage provision of an automobile policy, we have had occasion to discuss the matter of an "intentional act" in connection with similar language contained in homeowners' policies. Specifically, in *State Farm Fire & Cas. Co. v. Muth*, 190 Neb. 248, 207 N.W.2d 364 (1973), we held: "An injury is either expected or intended within the meaning of an exclusion in a policy of liability insurance reading as follows: 'This policy does not apply to bodily injury or property damage which is either expected or intended from the standpoint of the insured,' if the insured acted with specific intent to cause harm to a third party." (Syllabus of the court.)

To the same effect see *Allstate Ins. Co. v. Novak*, *ante* p. 184, 313 N.W.2d 636 (1981). There is simply no evidence in the record from which it may be concluded that Sullivan was driving his automobile in such a way so as to intentionally collide with the NPPD power pole and cause damage to the pole. Whatever the evidence

may disclose, it is clear that Sullivan was intending to rapidly leave the area where the pole was located and in fact negligently, but unintentionally, struck the pole. Even after Sullivan struck the pole, he sought to return to the road for the obvious purpose of continuing his efforts to flee the area. There is simply no evidence that he "intended" to leave the highway and strike the pole. If anything, the opposite is established by the evidence.

If we were to accept Great Plains' argument, we would be compelled to hold that in every accident where there is any evidence of a violation of law or any evidence that the automobile was then being knowingly and intentionally operated, though perhaps in a negligent or careless or reckless manner, there would be no coverage for the damage done to another's property by reason of the driver's operation of his vehicle. In essence, we would be virtually making insured motorists uninsured motorists by reason of their own acts. We believe that that would be totally contrary to both the intent of the policy and the protection it offers, as well as the public policy of this state. Absent specific evidence to support the claim that the driver of a motor vehicle specifically intended to cause an injury similar to the type which resulted, we hold that damage to property owned by another and caused by reason of the negligent, or careless, or even reckless operation of an automobile is covered by a liability provision of a policy, as in this policy, and is not bodily injury or property damage caused intentionally by or at the direction of the insured and therefore not within the exclusion of a liability policy which specifically excludes coverage for damages to persons or property caused intentionally by or at the direction of the insured.

We turn then to Great Plains' claim that there is no coverage under the policy for the collision by reason of the fact that this was not an "accidental loss" within the meaning of the policy. To some extent, the reasoning

directed at the arguments made by Great Plains concerning the liability coverage are equally applicable to our examination of the collision coverage. Again, we believe that Great Plains' position is in error.

It is Great Plains' position that the collision which occurred on February 4, 1977, was no "accident" but, rather, was the direct and intentional action of Sullivan. To support that argument Great Plains maintains that Sullivan's plea of guilty by waiver to a charge of willful and reckless driving prevents the occurrence from being considered an "accidental loss" as required by the policy. The decisions both in our state and elsewhere do not support such a position.

In *Riley v. National Auto Ins. Co.*, 162 Neb. 658, 664, 77 N.W.2d 241, 246 (1956), we defined an accident by saying: "'An accident, within the meaning of contracts of the kind here considered, includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby.' [Citations omitted.]"

And in *City of Kimball v. St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 154, 206 N.W.2d 632, 634 (1973), we said: "The word 'accident' as used in liability insurance is a more comprehensive term than 'negligence' and in its common signification the word means an unexpected happening without intention. [Citation omitted.]" See, also, 45 C.J.S. *Insurance* § 829 at 887-88 (1946), wherein it is provided: "The word 'accident,' as used in an automobile liability policy, is a more comprehensive term than 'negligence,' and, in its common signification, means an unexpected happening without intention or design. A policy covering liability arising from an accident, or from injuries accidentally sustained, does not cover an injury resulting from the willful act of insured, but it does cover claims based on negligence, recklessness, or wanton misconduct, where no intent or purpose to injure is shown."

It should be kept in mind that the willful, reckless act with which Sullivan was charged was the operation

of the motor vehicle upon a public highway and not the collision with the power pole. Had the accident never occurred, Sullivan would in all likelihood still have been charged with willful, reckless driving.

In *Riley v. National Auto Ins. Co.*, *supra* at 663, 77 N.W.2d at 245-46, we quoted from *Terrien v. Pawtucket Mutual Fire Ins. Co.*, 96 N.H. 182, 71 A.2d 742 (1950), saying: "'While it could be found that the plaintiff's action in driving his truck over the holes was deliberate, he was not so far chargeable with knowledge that the resulting breakdown was probable, as to require a finding that he deliberately incurred the loss. The collapse of the truck could be found to be an untoward, unusual and unexpected event. What happened was well within the meaning attributed to the word "accidental" as commonly understood. * * * The loss which occurred to the plaintiff's automobile on July 13 was "an accidental loss" within the meaning of the policy, which contained no exclusion of loss due to negligent or intentional acts of the insured.'"

Furthermore, in *Riley*, *supra* at 664, 77 N.W.2d at 246, we said: "While it might be said that Riley intentionally drove the car while he was intoxicated, it does not follow that the accident was intentional from the fact of intoxication alone. We think the insured automobile suffered damage as a result of accident within the insuring provisions of the policy."

In the case of *Metropolitan Life Insurance Co. v. Henkel*, 234 F.2d 69, 71 (4th Cir. 1956), the U.S. Court of Appeals for the Fourth Circuit said: "It is true, of course, that insured was exposing himself to danger in driving the car at such a high rate of speed; but 'voluntary exposure to danger by the holder of an accident insurance policy will not defeat recovery for an injury caused by accidental means, where such exposure is not an exception in the policy, and the insured has no intention of producing the injury received'. 29 Am. Jur. p. 716, quoted with approval in

Suttles v. Blue Ridge Ins. Co., 238 N.C. 539, 78 S.E.2d 246, 248. Nor does the fact that the speed of the automobile was in violation of law affect the coverage of the policy, in the absence of an exception to that effect. Poole v. Imperial Mutual Life & Health Ins. Co., 188 N.C. 468, 125 S.E. 8; Zurich General Accident & Liability Ins. Co. v. Flickinger, 4 Cir., 33 F.2d 853, 856, 68 A.L.R. 161. As said by this court in the case last cited: 'If insurance companies desire to avoid liability on such ground, they should insert a clause in their policies to that effect.'"

Mr. Justice Cardozo, while still a member of the New York Court of Appeals, perhaps said it best in the case of *Messersmith v. American Fidelity Co.*, 232 N.Y. 161, 165-66, 133 N.E. 432, 433 (1921), when he said: "Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes. The field of exclusion would be indefinitely expanded if the defendant's argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is willful when viewed in isolation and irrespective of its consequences. An act *ex vi termini* imports the exercise of volition (Holland, Jurisprudence [8th ed.], pp. 93, 94). Even so, if the untoward consequences are not adverted to—at all events, if the failure to advert to them is not reckless and wanton (Cf. Penal Law, sec. 1044, subd. 2)—liability for the consequences may be a liability for negligence (Holland, *supra*, pp. 97, 98; 2 Austin, Lectures, p. 103; Salmond, Jurisprudence, pp. 351, 363; *Martin v. Herzog*, 228 N.Y. 164, 168, Cf. 1 Street, Foundations of Legal Liability, 80; Holmes, Common Law, pp. 103, 105.) A driver turns for a moment to the wrong side of the road, in the belief that the path is clear, and deviation safe. The act of deviation is willful, but not the collision supervening. The occupant of a dwelling leaves a flower pot upon the window-sill, and the pot, dislodged by wind, falls upon

a passing wayfarer (N.Y. City Ordinances, § 250). The position of the flower pot is intended, but not the ensuing impact. The character of the liability is not to be determined by analyzing the constituent acts which, in combination, make up the transaction, and viewing them distributively. It is determined by the quality and purpose of the transaction as a whole."

There is no evidence in the record to support the claim that Sullivan was operating his motor vehicle at excessive rates of speed with the intent and purpose of driving it off the road and into the power pole or for the purpose of causing his vehicle to suffer a collision. Calm, rational consideration of the events, particularly in retrospect, might cause one to consider the possibility of such an accident occurring, but such deliberate contemplation would probably eliminate almost all, if not all, accidents. That is not what a collision policy is intended to protect against. To be sure, if evidence could be adduced to show that Sullivan deliberately and intentionally ran into the pole, a different result might be obtained. But such is simply not the case. The record discloses that Sullivan was operating his motor vehicle in a careless and reckless manner to be sure, but not with the intent of leaving the road and striking the power pole, thereby causing damage to both the pole and the motor vehicle. The damage to the vehicle, which occurred as a result of his leaving the road unexpectedly and without his control, was indeed an accident within the meaning of the policy, even though the means by which the accident came about were created by his own careless behavior. But, as we have noted, that is indeed the result in virtually every accident. As we have earlier indicated, were we to take the position advocated by Great Plains herein, we would virtually exclude from coverage every accident which occurs, on the basis that either speed was involved or some other violation of law occurred.

The trial court was correct in declaring that Great Plains was liable to Sullivan for the loss to his motor

vehicle under the terms of the policy.

Because this was a declaratory judgment action brought by Sullivan on a policy of insurance, Sullivan is likewise entitled to an attorney fee pursuant to the provisions of Neb. Rev. Stat. § 44-359 (Reissue 1978). We therefore order that an attorney fee in the amount of $1,000 be awarded against Great Plains and in favor of Sullivan to apply upon the services of his attorney in this court. The judgment is affirmed.

AFFIRMED.