COLUMBIA NATIONAL INSURANCE, FORMERLY KNOWN AS
NATIONAL AMERICAN INSURANCE COMPANY OF NEBRASKA, A
DIVISION OF COLUMBIA INSURANCE GROUP, APPELLEE, V.
PACESETTER HOMES, INC., A NEBRASKA CORPORATION, AND
JOSEPH FINGERLIN, APPELLANTS.

532 N.W.2d 1

Filed May 19, 1995.    No. S-93-311.

Robert J. Huck and Robert S. Lannin, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellants.

William J. Brennan and Joseph A. Jordano, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellee.

CAPORALE, FAHRNBRUCH, WRIGHT, and CONNOLLY, JJ., and MILLER–LERMAN, Judge, and GRANT, J., Retired.

WRIGHT, J.

## I. INTRODUCTION

Columbia National Insurance (Columbia) brought this action for declaratory judgment, seeking a determination of whether it had a duty to defend Pacesetter Homes, Inc. (Pacesetter), and Joseph Fingerlin, one of Pacesetter's former employees, in three suits brought in Sarpy County (the Sarpy County actions). The district court held that Columbia had no duty to defend. Pacesetter and Fingerlin appeal.

## II. SCOPE OF REVIEW

When a declaratory judgment action presents questions of law, an appellate court has an obligation to reach its conclusion independent from the conclusion reached by the trial court with regard to those questions. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994); *Jaksha v. Thomas*, 243 Neb. 794, 502 N.W.2d 826 (1993).

Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Beatrice Nat. Bank v. Southeast Neb. Co-op*, 230 Neb. 671, 432 N.W.2d 842 (1988); *Havelock Bank v. Western Surety Co.*, 217 Neb. 560, 352 N.W.2d 855 (1984).

The construction of an insurance contract or policy is a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994).

## III. FACTS

### 1. BACKGROUND

In the late 1970's, Pacesetter began developing a subdivision

in Sarpy County known as Millard Highlands South. The first plat was filed in 1976. Also in the late 1970's, the Nebraska Department of Roads hired an engineering firm to design a set of proposed plans for an Interstate 80–Harrison Street interchange (126th Street).

At a public hearing held on July 7, 1980, in Ralston, Nebraska, functional plans were presented in order to allow public comment on the proposed interchange. The plans showed both the location of 126th Street in relation to the Millard Highlands South eastern property line as originally platted and the anticipated limits of construction or right-of-way that would be needed. The plans depicted the trees running along the eastern border of Pacesetter's property as falling within the limits of the proposed construction. According to the Douglas County surveyor, the trees and the hill on which they stood had to be removed to make way for 126th Street.

In 1986, the engineering firm hired by Pacesetter completed Millard Highlands South replat IV. This replat was done to accommodate the expected limits of construction for 126th Street outlined in the 1980 functional plans. The replat was accepted by the Sarpy County Board of County Commissioners on April 7, 1987. On March 9, 1988, Ralph Heavrin, as president of Pacesetter, transferred by warranty deed to the Department of Roads the portion of the subdivision which was to be included in the 126th Street right-of-way. The right-of-way property sold to the Department of Roads included the hill and trees depicted in the 1980 functional plans.

## 2. REAL ESTATE PURCHASES

On March 11, 1986, Rayne and Cheryl Balwanz, plaintiffs in the Sarpy County actions, were induced by Fingerlin to purchase Lot 48, Millard Highlands South replat IV. In May 1986, the Balwanzes were informed that a portion of Lot 48 was to be condemned for the 126th Street right-of-way. The Balwanzes then changed their purchase to Lot 53. On July 31, 1988, David and Lisa Ammerman, plaintiffs in the Sarpy County actions, were induced by Fingerlin to purchase Lot 602, Millard Highlands South replat IV. This lot backed up to the property sold by Pacesetter to the Department of Roads for the

126th Street right-of-way. On September 21, 1988, Scott and Teri Schaefer, also plaintiffs in the Sarpy County actions, were induced by Fingerlin to purchase Lot 600, Millard Highlands South replat IV. This lot also backed up to the property sold by Pacesetter for the right-of-way.

### 3. REAL ESTATE COMMISSION PROCEEDINGS

On April 4 and May 9, 1990, respectively, the Schaefers and the Ammermans filed formal complaints with the State Real Estate Commission (Commission). The Schaefers and Ammermans alleged that Heavrin and Fingerlin, acting on behalf of Pacesetter, made material representations regarding the condition of the lots they purchased in 1988. These representations related to the ownership and permanency of the hill and trees east of their property lines, the same hill and trees deeded in 1988 to the Department of Roads. The Schaefers and Ammermans alleged that Fingerlin misrepresented the nature of 126th Street and the location of 126th Street in relation to Lots 600 and 602 by indicating that the hill and trees would be a natural buffer. The Commission conducted a formal adjudication of the complaints and, on September 24, 1990, issued an order stating specific findings of fact and conclusions of law regarding the complaints. The Commission generally found that Fingerlin knowingly and intentionally made misrepresentations. The Commission's order was not appealed.

### 4. THE SARPY COUNTY ACTIONS

In March 1991, the Schaefers, Ammermans, and Balwanzes filed the Sarpy County actions against Pacesetter and Fingerlin. These plaintiffs alleged that Fingerlin knowingly made misrepresentations about their respective lots in connection with the purchase of their homes. They alleged Fingerlin represented that the hill and trees bordering Lots 600 and 602 and adjacent to Lot 53 were owned by Pacesetter, that Pacesetter intended to keep the hill and trees in place, and that Pacesetter did not intend to remove the hill or trees. The plaintiffs alleged Fingerlin told them that 126th Street would be built a sufficient distance from their lots and that 126th Street was not to be a connecting on-off ramp, just a four-lane street. They claimed that as a direct and proximate result of the actions of Pacesetter

and Fingerlin they had been damaged in the following respects: (1) diminution in the value of their property and (2) loss of enjoyment of the trees.

Pacesetter and Fingerlin denied any wrongdoing and filed a claim with Columbia requesting that it assume the defense of these lawsuits. Based upon a review of the petitions and upon Columbia's knowledge of the complaints filed with the Commission, Columbia denied the claim and declined to defend, contending (1) there was no coverage under the policy for an intentional act, (2) the conduct alleged was not an occurrence as defined by the policy, and (3) the damages claimed were not property damage as defined by the policy.

## 5. THE POLICY

Columbia issued to Pacesetter a special multiperil comprehensive general liability insurance policy covering the period from January 1, 1988, to January 1, 1989. No issue is raised as to whether the policy was in effect at the time of the misrepresentations or as to whether this fact would affect the coverage. Therefore, we do not decide that issue.

Section II of the policy addresses liability coverage. That section contains the following provisions relating to bodily injury liability and property damage liability:

I. The [c]ompany will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury or

property damage

to which this insurance applies, caused by an occurrence, and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after

the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Emphasis omitted.)

Under the definitions applicable to section II, an occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Emphasis omitted.) Property damage is defined as

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

(Emphasis omitted.)

The policy included a broad–form comprehensive general liability endorsement which contained the following personal injury and advertising injury liability coverage provisions:

> (A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

> . . . .

> (D) Additional Definitions

> "Advertising Injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if

such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

"Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the named insured shall not be deemed personal injury.

(Emphasis omitted.)

## 6. DECLARATORY JUDGMENT ACTION

Columbia brought this declaratory judgment action, seeking a determination that Columbia was not legally or contractually obligated under the terms of the policy to defend Pacesetter and Fingerlin or to pay any judgment rendered against them in the Sarpy County actions. The parties stipulated that Columbia is an insurance company licensed and incorporated under the laws of the State of Nebraska; that Pacesetter is the developer and seller of real estate known as the Millard Highlands South subdivision in Sarpy County, Nebraska; and that Fingerlin was a real estate broker, sales agent, and employee of Pacesetter.

The trial court found that the evidence did not show, nor did the homeowners allege in the Sarpy County actions, an invasion of the homeowners' right of private occupancy. The court stated that in each instance, the homeowners own and occupy the lots they contracted to buy and received on the dates the property was conveyed to them by warranty deed. The court found the evidence did not show, nor did the homeowners allege, any physical damage to their property or to any property they were

sold or believed they purchased from Pacesetter. The court noted the damage allegations claimed diminution in value and loss of enjoyment of the trees formerly located on the adjacent property now owned by the Department of Roads.

The trial court found that the evidence established that the structural soundness of the homes and Lots 53, 600, and 602 were unaffected by the removal of the hill and trees and that the grading for 126th Street did not affect the drainage or structural integrity of these lots. The court stated that the plain language of the policy required that the homeowners allege there was damage or loss of use to their tangible property in order to come within the meaning of the definition of property damage under the policy. The court noted that the homeowners did not allege they suffered a personal injury or an advertising injury under the policy and that there was no evidence to support such a conclusion.

A verbatim transcript of the proceedings before the Commission was received into evidence without objection. Based on the pleadings and the evidence, the trial court found that there was no coverage under the policy for the acts alleged in the Sarpy County actions. The court held that Columbia had no duty to assume the financial costs of defending Pacesetter and Fingerlin in the Sarpy County actions.

## IV. ASSIGNMENTS OF ERROR

On appeal, Pacesetter and Fingerlin assign numerous errors, which we condense into three broad divisions. First, the trial court erred by determining that the liability coverage provision (section II) of Columbia's policy did not provide coverage for Fingerlin's actions. Second, the court erred by determining that the policy's broad-form comprehensive general liability endorsement did not provide coverage. Third, the court erred by prematurely determining the issue of coverage.

## V. ANALYSIS

Despite the amount of evidence presented before the trial court, this case is a matter of insurance contract construction. The construction of an insurance contract or policy is a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion

irrespective of the determination made by the court below. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994).

### 1. SECTION II LIABILITY COVERAGE

We first examine the liability coverage section of the policy, which has been quoted above. This section requires Columbia to pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage caused by an *occurrence*. The first question is, What is an occurrence?

Columbia argues its policy excludes the misrepresentations made by Fingerlin because his actions were intentional and are, therefore, excluded under the terms and conditions of the policy. The letter from Columbia to Pacesetter denying coverage and declining to defend stated:

> Under the petitions that have been forwarded to us, the conduct of Pacesetter's real estate person is alleged to be intentional; and under the policy, there is no coverage for an intentional act. Further, the conduct that was alleged is not an occurrence as defined by the policy and the damages claimed are not property damages defined by the policy.

Each of the petitions filed in the Sarpy County actions alleged that Fingerlin was acting as an agent and employee of Pacesetter and that the misstatements of material fact were known to Fingerlin and were made with the full knowledge and consent of Pacesetter. The plaintiffs alleged that Fingerlin's misrepresentations, which were imputed to Pacesetter, constituted a cause of action for fraudulent misrepresentation and that such misrepresentations induced the plaintiffs to enter into real estate purchase contracts to their damage with respect to diminution in the value of their property and loss of enjoyment of the trees.

### (a) Occurrence

The policy defines an occurrence as "an accident . . . neither expected nor intended from the standpoint of the insured." Our task is to determine whether or not Fingerlin's actions were

intentional within the meaning of the definition. Pacesetter argues that *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 317 N.W.2d 375 (1982), holds that the word "intentional" means acting with specific intent to harm a third party and that since Fingerlin testified he did not intend to harm anyone or to misrepresent anything to anyone, his actions were covered by the policy. We do not agree.

In *Sullivan*, the insured lost control of his car, which left the road, struck a utility pole, and ended up in a pasture. The insurer argued that damage to the car was intentional because the insured was speeding. We rejected the insurer's argument. We held that the insured's intentional and reckless operation of his vehicle was covered unless there was evidence that the insured intended to do the specific act that caused the damage, i.e., striking a utility pole and driving into a pasture. *Sullivan* defines "intentional" not as the specific intent to cause injury or harm, but, rather, as the intent to do a specific act which causes injury or harm. In order to determine whether the insured intended to do the specific act which caused injury or harm, *Sullivan* requires us to examine the " 'quality and purpose of the transaction as a whole.' " *Id.* at 854, 317 N.W.2d at 380.

### (i) Fingerlin's Actions

The Sarpy County plaintiffs alleged Fingerlin knowingly misrepresented that the hill and trees adjacent to the lots were owned by Pacesetter, that Pacesetter intended on keeping the hill and trees in place, that 126th Street would be built a sufficient distance from the lots, and that 126th Street would not be a connecting on–off ramp for Interstate 80. The plaintiffs alleged that during the course of their discussions with Fingerlin, he knowingly misrepresented material facts concerning the location of the 126th Street right–of–way, and that such misrepresentations resulted in the purchase of their lots and, ultimately, in their sustaining damages for diminution in the value of their property and loss of the enjoyment of the trees.

### (ii) Real Estate Commission Proceedings

A verbatim transcript of the proceedings before the Commission was received into evidence by the trial court without objection. The court found that the decision of the

Commission showed that Fingerlin knowingly failed to disclose a material fact with regard to the condition of the real estate. Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Beatrice Nat. Bank v. Southeast Neb. Co-op*, 230 Neb. 671, 432 N.W.2d 842 (1988); *Havelock Bank v. Western Surety Co.*, 217 Neb. 560, 352 N.W.2d 855 (1984). The evidence established that Fingerlin knowingly made these misrepresentations to induce the purchase of real estate. His conduct was not accidental.

We find that the facts disclosed in the Commission hearings and the facts adduced during the declaratory judgment proceedings clearly indicate that the misconduct involved affirmative misrepresentations and not mere negligence. Fingerlin had notarized the warranty deed which conveyed the property to the Department of Roads. We cannot say that Fingerlin negligently failed to ascertain who owned the hill and trees when he assured the purchasers that Pacesetter owned them.

### (iii) Resolution

In conclusion, the quality and purpose of the transaction as a whole shows that Fingerlin knowingly misrepresented the ownership of the hill and trees in question and did so specifically to induce the purchase of Lots 53, 600, and 602. We have stated: " 'An accident, within the meaning of contracts of the kind here considered, includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby.' " *Riley v. National Auto Ins. Co.*, 162 Neb. 658, 664, 77 N.W.2d 241, 246 (1956), *overruled on other grounds, Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986). In *City of Kimball v. St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 154, 206 N.W.2d 632, 634 (1973), we stated: "The word 'accident' as used in liability insurance is a more comprehensive term than 'negligence' and in its common signification the word means an unexpected happening without intention." Whether or not Fingerlin meant to harm anyone is immaterial. He specifically intended to induce the purchase of the lots, which purchase caused the alleged injuries. His actions

were, therefore, intentional. Under the policy, intentional acts are excluded from the definition of an occurrence. Accordingly, Fingerlin's actions, as imputed to Pacesetter, are not covered.

### (b) Damages Claimed

Even if the activity was an occurrence, there was no coverage for property damage as alleged by the Sarpy County plaintiffs. The trial court found: "The evidence does not show, nor do the homeowners allege any physical damage to their property (lots 53, 600 or 602) or to any property they were told or believed they had purchased from Pacesetter." We agree. The policy's property damage definition consists of two parts. The first part refers to physical injury to or destruction of *tangible* property which occurs during the policy period, including loss of use thereof at any time resulting therefrom. The alleged diminution in value of the property and loss of enjoyment of the trees do not constitute physical injury to or destruction of tangible property under the definition of property damage in the policy issued to Pacesetter. The Sarpy County plaintiffs did not allege that there had been any physical injury to or destruction of the tangible property. The second part of the property damage definition refers to loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period. The diminution in value or loss of enjoyment of the trees is not a loss of use covered under the policy.

Columbia cites *General Ins. Co. v. Western American Dev.*, 43 Or. App. 671, 603 P.2d 1245 (1979), in support of its position that diminution in value is not a loss of use constituting property damage under the terms of the policy issued by Columbia. In *General Ins. Co.*, the insurer brought a declaratory judgment action seeking a determination as to its duty to defend and indemnify its insured. The dispute arose from the sale of mobile home lots by Western American Development Company, Inc., and one of its officers. As a result, five separate actions were commenced by the purchasers of the lots. The complaints alleged the defendants knowingly or recklessly misrepresented the nature and extent of an easement held by the U.S. Army Corps of Engineers. The purchasers

asserted that they relied upon the misrepresentations in purchasing the lots and that they were injured because the easement allowing the corps to come onto the lots made the lots worth less than they had anticipated. At the time General Insurance Company of America brought the declaratory judgment action, one of the five cases was still pending.

The insurance policy in that case contained similar provisions to the policy issued by Columbia with regard to the obligation to pay damages because of bodily injury or property damage caused by an occurrence. Occurrence was defined as an event including continuous or repeated exposure to conditions which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured. The property damage provisions were also similar to those in the policy issued by Columbia. The court concluded that the diminution in value claimed by the purchasers was not equivalent to the loss of use of tangible property. We cite *General Ins. Co.* in support of our conclusion that the damages claimed in the Sarpy County actions are not the loss of use of tangible property under the controlling documents.

### (c) Liability Coverage Under Section II

We therefore conclude that under the policy there was no covered occurrence and that the alleged diminution in value and loss of enjoyment of the trees are not property damage for loss of use of the tangible property when such property has not been physically injured or destroyed.

### 2. BROAD–FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

We now turn to the broad–form comprehensive general liability endorsement. The endorsement covers, inter alia, personal injury and advertising injury liability. Pacesetter and Fingerlin argue that the coverage extended through these provisions obligated Columbia to defend them in the Sarpy County actions.

Among the errors assigned by Pacesetter and Fingerlin is one claiming that the trial court erred in refusing to allow Pacesetter and Fingerlin to withdraw their rest and introduce three sets of interrogatories which described more clearly the type of

damages claimed by the Sarpy County plaintiffs, i.e., noise, dust, ground vibration, diminution in the value of their property, loss of trees, and increased traffic volume. The court committed no error because, as explained below, the evidence Pacesetter and Fingerlin attempted to introduce had no bearing on the question of coverage under the policy.

Pacesetter and Fingerlin claim that the Sarpy County plaintiffs have alleged a personal injury. They point specifically to the personal injury definition regarding "wrongful entry or eviction or other invasion of the right of private occupancy." Pacesetter and Fingerlin maintain that the plaintiffs' factual allegations which underlie this "invasion" are the noise, dust, lighting, and other construction activities from 126th Street. With regard to such injuries, we find that the precedents cited by Pacesetter simply do not address a factual setting such as the one now before us. It is critical to remember that the tangible property purchased by the Sarpy County plaintiffs remains unchanged. The underlying causes of action do not claim any physical invasion of the plaintiffs' own lots, nor are they based upon trespass or nuisance.

In *Decorative Center v. Employers Cas.*, 833 S.W.2d 257 (Tex. App. 1992), the insurer brought an action seeking a declaration that it was not responsible for providing coverage to the owner and the general contractor of a construction project (the insureds) in connection with a nuisance and trespass suit brought against the owner and the contractor by an adjacent property owner (the Bakers). The insureds claimed that because the Bakers' ability to use their property was interfered with, the interference was an "other invasion of the right of private occupancy." The contractor caused various forms of physical and mental harm to the Bakers and their property, including deliberately working late at night, directing water onto the Bakers' property, dropping heavy limbs onto the property, and cursing the Bakers when they complained to the workers on duty. The Bakers sued, and the insurer defended the suit, but denied coverage. The policy in question contained a provision dealing with personal injury liability coverage arising out of, inter alia, " 'wrongful entry or eviction, or other invasion of the right of private occupancy.' " *Id*. at 259.

The insureds argued that because the Bakers' ability to use their property was interfered with, the interference constituted an "other invasion of the right of private occupancy" and, therefore, triggered coverage. The court disagreed: " 'Occupancy' normally refers to the state of being inhabited. The right of 'private occupancy' can only refer to those rights associated with an individual's act of inhabiting the premises, and not to rights associated with the individual's right to use and enjoy the inhabited premises." *Id.* at 261. In other words, the right of private occupancy is the legal right to occupy premises, not the right to *enjoy* occupying those premises. In relation to this, it should be noted that none of the Sarpy County plaintiffs pled wrongful or constructive eviction from their property.

In *Decorative Center*, the court noted: " 'Ejusdem generis principles draw on the sensible notion that words such as "or other invasion of the right of private occupancy" are intended to encompass actions of the same general type as, though not specifically embraced within, "wrongful entry or eviction." Those two terms have commonly understood meanings.' " *Id.* at 262 (quoting *Martin v. Brunzelle*, 699 F. Supp. 167 (N.D. Ill. 1988)). We believe the court's reasoning in *Decorative Center* is correct.

It is therefore quite clear that with or without the information contained in the interrogatories, there was no coverage under the personal injury section of the policy. Furthermore, the claim of an advertising injury is transparently without merit. Pacesetter's own advertising activities were not shown to have caused any injury to the Sarpy County plaintiffs, nor do we find that Fingerlin's activities constitute an advertising injury under the specific definition contained in the endorsement. There is no coverage under the endorsement. The allegations of diminution in value and loss of enjoyment of the trees do not create an action under the endorsement for personal injury or advertising injury.

### 3. PREMATURE DECLARATORY JUDGMENT

Pacesetter and Fingerlin contend the trial court erred in entering a declaratory judgment when the Sarpy County actions

were still pending. They rely heavily upon our decision in *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981). In *Novak*, the district court, via a declaratory judgment, held that the insurer was not obligated to defend the insured or to pay any judgment rendered against the insured under the terms of the policy. The insured was alleged to have struck a third party in the face.

Allstate refused to provide a defense or to pay any damages, based upon an exclusion stating that the policy did not apply " 'to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.' " *Id.* at 187, 313 N.W.2d at 638. We noted there were two separate obligations under the policy, one to pay and one to defend. We determined that until the facts in the assault case were resolved, the court could not determine Allstate's obligation to pay, and that, therefore, a declaratory judgment could not be granted on that question. The insured claimed he was acting in self-defense when he struck the third party, and we stated that such an act might be negligent and not intentional, thereby bringing the act within the coverage of the policy.

In *Novak*, we recognized that there may be situations where the language of the policy is such that the insurer's obligation to pay can be determined even before the insured's liability is determined. We cited *Jones v. Norval*, 203 Neb. 549, 279 N.W.2d 388 (1979), for the proposition that where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries as well as the act are intentional. In *Jones*, the evidence was undisputed that the insured intentionally hit another with his fist and rendered the person unconscious, and we held that an intent to cause bodily injury could be inferred as a matter of law.

In the present case, the totality of the facts established that Fingerlin's misrepresentations were knowingly made, and there are no factual indications to the contrary. In *Novak*, there was a question of fact as to whether Novak's actions were negligent and not intentional. Fingerlin clearly intended his actions to induce the purchase of the real estate. This was the basis of the Sarpy County actions. Regardless of Fingerlin's claim that he intended no harm, the cause of action is based upon an

intentional act which induced the purchase of the real estate. We do not base the obligation to defend solely upon the pleadings, but also upon the facts established from the Commission hearings and the evidence introduced in the declaratory judgment action. "[I]f, according to facts alleged in a petition and ascertained by an insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to defend its insured." *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 784, 502 N.W.2d 484, 487 (1993). The trial court did not err in entering the declaratory judgment.

After the trial court had entered its order in the declaratory judgment action, Pacesetter and Fingerlin moved for a new trial, alleging newly discovered evidence consisting of the second amended petition filed by the Schaefers in their Sarpy County action and the trial testimony of Rayne Balwanz in his action. In the Schaefer case, the second amended petition alleged for the first time a claim based upon negligence. In the Balwanz case, Rayne Balwanz testified with regard to the construction of the interchange and the interference with the quiet and peaceful enjoyment of his home. We find this claim of error has no merit because the evidence was not material. See Neb. Rev. Stat. § 25-1143(2) (Reissue 1989). We express no opinion as to whether the evidence qualified as newly discovered evidence. Section 25-1143 requires that any newly discovered evidence be "material for the party applying" for a new trial. Since we have determined that Fingerlin's misrepresentations were intentional and not covered by the policy, the allegations of negligence are immaterial. Since we have determined as a question of law that the dust and noise were not an invasion of the right of private occupancy, testimony about such dust and noise is also irrelevant. The construction of an insurance policy is a question of law. See *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994). Consequently, the evidence was not material, even if it qualified as newly discovered evidence. The trial court was therefore correct in refusing to grant a new trial.

## VI. CONCLUSION

In construing the provisions of an insurance policy, a court

must determine from the clear language of the policy whether the insurer in fact insured against the risk involved. *Roth v. Farmers Mut. Ins. Co.*, 220 Neb. 612, 371 N.W.2d 289 (1985). When a declaratory judgment action presents questions of law, an appellate court has an obligation to reach its conclusion independent from the conclusion reached by the trial court with regard to those questions. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). We conclude that the trial court correctly determined that there was no coverage under the terms of the policy and that Columbia had no duty to defend. For the reasons set forth herein, the judgment of the Douglas County District Court is affirmed.

AFFIRMED.

WHITE, C.J., and LANPHIER, J., not participating.