JEROME W. NEILL, APPELLANT, V. THOMAS C. HEMPHILL, AN INDIVIDUAL, AND EMERY, NYE, BLAZEK, AND HEMPHILL, A NEBRASKA PARTNERSHIP, APPELLEES.

607 N.W. 2d 500

Filed March 10, 2000. No. S-98-885.

James R. Welsh, of Bradford, Coenen & Welsh, for appellant.

Dean F. Suing, of Katskee, Henatsch & Suing, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
This is a legal malpractice case brought by Jerome W. Neill against Thomas C. Hemphill and the law firm of Emery, Nye, Blazek, and Hemphill (collectively Hemphill). Neill alleged that he retained Hemphill to represent him in a medical malpractice action against Dr. John V. Fernandez and Mercy Hospital

(Mercy) in Council Bluffs, Iowa. Neill further alleged that no action was filed prior to the expiration of the statute of limitations and that he was damaged as a result. Hemphill filed a motion for summary judgment, alleging that there was no credible evidence to show that Hemphill's negligence, if any, was the proximate cause of any loss to Neill. The district court granted the motion, and Neill appeals.

## FACTUAL BACKGROUND

Neill was involuntarily committed to Mercy on March 11, 1993, for a psychiatric evaluation under the care of Fernandez. Neill's past medical history included hypertension, and at the time of his admission to Mercy, he was being treated for hypertension by Dr. Martin M. Mancuso.

Neill's initial examination at Mercy showed elevated blood pressure, and his blood pressure remained elevated until March 13, 1993, when Fernandez increased the dosage of Neill's antihypertensive medication and placed Neill on a restricted diet. Neill's blood pressure was charted as normal on March 14, but by March 15, was again elevated. Fernandez again increased Neill's medication. Neill's blood pressure remained high, but returned to normal on March 17. Neill's blood pressure on the morning of March 18 was on the borderline between normal and mild hypertension. Neill was then discharged from Mercy.

On April 11, 1993, Neill complained to Mancuso about chest pains. At that time, according to Mancuso, Neill suffered an injury to the lower portion of his heart, which we reasonably infer to be the myocardial infarction discussed in Mancuso's deposition. Neill was admitted to Archbishop Bergan Mercy Hospital, where a coronary angioplasty was performed. Neill alleges that he has suffered myocardial damage and thickening of his coronary arteries. The focus of this appeal is Neill's allegation that Fernandez did not appropriately treat Neill's heart condition which would have prevented the later myocardial damage.

In December 1994, Neill allegedly retained Hemphill to represent him in a medical malpractice action against Fernandez and Mercy. On March 10, 1995, Hemphill allegedly assured Neill, "I'm on my way to file your lawsuit today." The statute of

limitations on the action allegedly expired with no action having been filed. A petition was subsequently filed on April 12, 1995, in the district court for Pottawattamie County, Iowa, but the petition was dismissed pursuant to Iowa's 2-year statute of limitations for malpractice actions. See Iowa Code Ann. § 614.1(9)(a) (West 1999).

## PROCEDURAL BACKGROUND

In the instant case, Hemphill filed a motion for summary judgment alleging, in sum, that Neill could prove no damages resulting from the alleged legal malpractice because there was insufficient evidence to show that Neill could have been successful in the underlying medical malpractice action. The district court stated:

> Dr. Mancuso testified that the [sic] Dr. Fernandez treated Plaintiff's high blood pressure appropriately. Dr. Mancuso opined that the [sic] Dr. Fernandez should have given additional tests, but could not state whether the results of those tests would show that Plaintiff had a cardiac problem.
>
> Further, in a subsequent affidavit, Dr. Mancuso did not given [sic] an opinion to a reasonable degree of medical certainty that Plaintiff suffered heart damage due to Dr. Fernandez' and Mercy Hospital's negligence, but "in all likelihood" Plaintiff would "not have suffered a myocardial infarction and permanent damage to his heart." Finally, He [sic] gave no satisfactory explanation for this in his affidavit for why the tests "should" have shown heart disease rather than in his deposition testimony where he couldn't say for sure that the tests would show heart disease.

The district court granted Hemphill summary judgment, stating that evidence from Neill's expert witness "failed to show that the negligence, if any, of the [sic] Dr. Fernandez and Mercy Hospital was the proximate cause of Plaintiff's heart damage."

## ASSIGNMENTS OF ERROR

Neill assigns that the district court erred in (1) disregarding the affidavit of Mancuso and (2) determining that insufficient evidence existed on the issue of causation and granting summary judgment to Hemphill.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Parnell v. Madonna Rehab. Hosp., ante* p. 125, 602 N.W.2d 461 (1999); *Ferguson v. Union Pacific RR. Co., ante* p. 78, 601 N.W.2d 907 (1999).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Knoll v. Board of Regents, ante* p. 1, 601 N.W.2d 757 (1999); *Bargmann v. State*, 257 Neb. 766, 600 N.W.2d 797 (1999).

## ANALYSIS

Neill's petition alleges three different theories of recovery based upon Hemphill's failure to file the underlying medical malpractice action: breach of contract, professional negligence, and fraudulent concealment. Hemphill argues that Neill cannot prevail on any of these theories of recovery because Neill was not damaged by Hemphill's allegedly negligent conduct. Hemphill's motion for summary judgment was predicated on his argument that Neill was not damaged by Hemphill's failure to timely file Neill's malpractice action against Fernandez, because Neill failed to show that his malpractice action against Fernandez would have resulted in a recovery for Neill.

■ In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries. *McLaughlin v. Hellbusch*, 256 Neb. 615, 591 N.W.2d 569 (1999); *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999).

### ISSUE OF CONTRADICTORY TESTIMONY

The evidence offered by Hemphill at the hearing on the motion for summary judgment consisted of portions of the

depositions of Mancuso and Fernandez. Neill offered the remainder of the depositions, as well as a subsequent affidavit from Mancuso which purported to clarify his deposition testimony. Although it is not entirely clear from the district court's order, it appears that the district court may not have considered the affidavit because the court determined that there was a conflict between the affidavit and deposition. Neill assigns this as error.

Neill argues that the district court relied upon *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 53, 313 N.W.2d 208, 213 (1981), in which this court stated that " ' "[w]here a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded." ' " This court noted that "[t]he important considerations are that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony." *Id.* at 55, 313 N.W.2d at 213.

As noted above, it is not clear from the district court's order whether the court relied upon *Momsen v. Nebraska Methodist Hospital, supra,* or otherwise determined that Mancuso's affidavit was discredited as a matter of law. To the extent that the district court may have relied upon *Momsen v. Nebraska Methodist Hospital*, however, this reliance was in error.

Even if it is assumed, but not decided, that Mancuso's deposition and subsequent affidavit are contradictory, the question of what the facts are is for the jury. See *Hawkes v. Lewis*, 252 Neb. 178, 560 N.W.2d 844 (1997). In *Hawkes v. Lewis*, the plaintiff sued Dr. Kirk Lewis, her surgeon, and Dr. Jeffrey Itkin, the assistant surgeon, for alleged negligence in packing her bowel during an abdominal hysterectomy. Itkin moved for and was granted a directed verdict at the close of the plaintiff's case based upon his testimony that he had not been involved with the packing of plaintiff's bowel. *Id.*

This court reversed the directed verdict, finding that a jury question had been presented regarding Itkin's involvement in packing the plaintiff's bowel. *Id.* In pretrial deposition testi-

mony, offered into evidence by the plaintiff, Itkin had denied that he performed any of the packing. *Id.* Lewis stated at one point, however, that he and Itkin had both packed the bowel and then at another point that he, Lewis, could not remember how many of the packs he had inserted. *Id.* We thus determined that directed verdict was error, holding that the good faith self-contradiction of an expert witness presents a question for the trier of fact. *Id.*

In the instant case, Mancuso testified in his deposition and affidavit that Fernandez was negligent in failing to perform a battery of tests that Mancuso believes could have diagnosed Neill's coronary artery condition prior to Neill's myocardial infarction. Mancuso's deposition includes the following colloquy with defense counsel:

Q. Just a couple minutes here, Doctor, and I'll — Doctor, can blood pressure rise because of a stressful situation, in your experience?

A. Certainly.

Q. Such as a committment [sic] to a psychiatric ward?

A. I believe so, yes.

Q. Could that certainly be a reason that, in your opinion, that Mr. Neill's blood pressure spiked as it did for a period of time?

A. It could well be, yes.

Q. Could actually have had absolutely nothing to do with a cardiac problem, more of a stress-related problem?

A. Certainly.

Q. And whether that's indeed what the situation was when he was at Mercy Hospital between 3-11 of 1993 to 3-18-1993, can you say one way or the other?

A. No, I cannot.

Q. Okay. So that, in fact — And I want to make sure I understand your opinion the way that you mean it, and I think I do, but I want to make sure I get it fleshed out here a little bit. Your criticism of Dr. Fernandez was that there was some tests that he could have indeed performed that were not done; is that correct?

A. That's correct.

Q. All right. And whether those tests would have shown that — or whether they would have been perfectly normal or not, we don't know that because they were not performed, correct?

A. That's correct.

Q. All right. And indeed it may well have been that those tests could have been normal, correct?

A. Could have been, yes.

Q. They could have been abnormal, correct?

A. Correct.

In his affidavit, Mancuso explained:

On page 31 of your Affiant's deposition, he was asked whether or not Mr. Neill's blood pressure could have spiked because of a stressful situation, whether or not Mr. Neill's spiked blood pressure could have had nothing to do with his cardiac problem, and whether any tests performed by Dr. Fernandez could have been normal. Certainly these "could" questions are things that could possibly happen, but it is your Affiant's opinion that Mr. Neill's high blood pressure was because of his coronary artery disease and that had the appropriate tests been performed, his coronary artery disease should have been diagnosed which he would have been treated for, and, in all likelihood, he would not have suffered a myocardial infarction and permanent damage to his heart.

(Emphasis in original.)

We conclude that the contradictions, if any, between Mancuso's deposition and his affidavit go to the weight or credibility of this testimony and are matters for the trier of fact. Therefore, the trial court erred if, in fact, the trial court discredited Mancuso's testimony in deciding to sustain Hemphill's motion for summary judgment.

### ISSUE OF MATERIAL FACT

Neill argues that Mancuso's testimony was sufficient to defeat summary judgment. In addition to the evidence noted above, Mancuso's affidavit states that

these medical care providers failed to order and do diagnostic workups such as an electrocardiogram, cardiac

enzymes and probably an echocardiogram which in your Affiant's opinion would likely have led to the diagnosis of Mr. Neill's coronary heart disease. That his coronary heart disease would have been appropriately treated with medication and, in your Affiant's opinion, would have prevented or avoided his myocardial infarction. That in your Affiant's opinion, Mr. Neill's heart has been permanently damaged because of the myocardial infarction he suffered.

 We have said that although expert medical testimony need not be couched in the magic words "reasonable medical certainty" or "reasonable probability," it must be sufficient as examined in its entirety to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999); *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). Medical expert testimony regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least "probable," in other words, more likely than not. *Doe v. Zedek, supra.*

Mancuso's affidavit states that had Neill been treated appropriately, such treatment would "likely" have led to the diagnosis of his condition, which "would have" led to appropriate care which "would have," "in all likelihood," prevented Neill's subsequent myocardial infarction and coronary damage. Taken in its entirety, this evidence is sufficient to create a genuine issue of material fact regarding whether Fernandez and Mercy could have, by providing the appropriate care, prevented Neill's heart attack and resulting injury. Consequently, the district court erred in entering Hemphill's summary judgment.

Hemphill's appellate argument is, in essence, that "there is no genuine issue of material fact deducible from the testimony of Dr. Mancuso that the blockage of the right artery and resultant surgery was occasioned by any treatment he received by Dr. Fernandez and personnel at Mercy Hospital." Brief for appellee at 9. Hemphill claims that the only injury shown by Neill was this blockage and the resultant angioplasty. Thus, Hemphill argues that there is no issue of material fact connecting Neill's injury to Mercy and Fernandez. This argument represents a misunderstanding of Neill's theory of the case.

958

Mancuso concedes in his deposition that Mercy and Fernandez' treatment was unrelated to Neill's angioplasty and to a later incident requiring hospitalization. The angioplasty, however, is not the substance of Neill's claimed injuries. Rather, the theory advanced by Mancuso is that Neill suffered a myocardial infarction prior to the angioplasty. The gravamen of Mancuso's testimony was that although the April 1993 angioplasty to the right coronary artery was probably inevitable, the heart attack before the angioplasty, and resulting cardiac injury, could have been avoided if Mercy and Fernandez had performed the correct diagnostic tests when they treated him in March.

While Hemphill is correct in arguing that Neill did not establish a causal connection between the treatment of Mercy and Fernandez and the angioplasty, that is not what Neill was trying to prove. Mancuso proffered an opinion that Neill's heart attack, and resulting coronary damage, would likely have been prevented had Mercy and Fernandez not been negligent. This evidence is sufficient to establish a material issue of fact regarding causation.

## CONCLUSION

For the reasons stated above, we conclude that the district court erred in entering summary judgment based upon the evidence presented. The judgment of the district court is reversed, and the cause is remanded to that court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.