RHONDA K. HOOD, APPELLANT, V. AAA MOTOR CLUB
INSURANCE ASSOCIATION, APPELLEE.

607 N.W. 2d 814

Filed March 24, 2000.    No. S-99-027.

David E. Copple and Sara E. Miller, of Copple & Rockey, P.C., for appellant.

Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

At the request of the appellee, AAA Motor Club Insurance Association (AAA), the appellant, Rhonda K. Hood, signed a named driver exclusion stating that insurance under her policy would not be afforded when her husband, James Bradley Hood,

was operating any automobile. Rhonda was subsequently injured in a collision when another car hit the vehicle in which she was a passenger and James was driving. The accident was proximately caused by the negligence of the other driver. Rhonda sought underinsured motorist coverage from AAA, who denied coverage on the basis of the named driver exclusion. The district court granted summary judgment in AAA's favor, and Rhonda appealed. We reverse on the basis that the named driver exclusion is void as against public policy and remand the cause for further proceedings.

## BACKGROUND

On July 21, 1993, Rhonda was a passenger in a van owned by Courtesy Ford Lincoln-Mercury (Courtesy Ford) and driven by James. The van was provided to James in the course of his employment. The van was proceeding east on U.S. Highway 275 in its proper lane. At the same time, a vehicle operated by Ryan Haase was proceeding westbound on Highway 275. Haase's vehicle swerved, crossing the center line, into the path of the van, causing a collision. The collision was proximately caused by the negligence of Haase, and as a result, Rhonda sustained known damages in the amount of $45,342.02. In addition, Rhonda sustained an unknown amount of future medical expenses and experienced pain and suffering, along with a permanent loss of earning capacity.

At the time of the collision, Haase was insured under an automobile liability insurance policy with policy limits of $25,000 per person and $50,000 per occurrence. Courtesy Ford carried underinsured coverage in the amount of $25,000 per person and $50,000 per occurrence. Rhonda carried a general liability policy issued by AAA that included underinsured coverage in the amount of $100,000 per person and $300,000 per occurrence. Rhonda recovered less than her total damages from the insurance companies covering Haase and Courtesy Ford. The record does not reflect the amount of the settlements. Rhonda then sought underinsured motorist coverage from AAA.

AAA denied coverage on the basis that the policy issued to Rhonda specifically excluded coverage when James was driving. An "Inter-Office Communique" dated November 5, 1990,

indicated that a motor vehicle record had been ordered regarding James, that he had failed to report two instances of speeding, and that he needed to be excluded. Rhonda then signed an endorsement excluding a named person effective November 17, 1990, which stated:

> In consideration of the premium charged and as a condition to the issuance of this policy, it is agreed that such insurance as is afforded under this policy shall not apply with respect to the operation of any automobile by the following named person:
>
> (Name) James Bradley Hood . . . .
>
> . . . [T]his endorsement . . . shall be valid and form a part of said policy, effective on the date shown. This endorsement shall remain in effect on any transfer, reinstatement or renewal of this policy unless it is voided by the association.

The agent returned the inter-office communique with the following notation "[a]ttached, please find the endorsement you had requested. Since James has a company car this will be no problem." Following the signing of the exclusion, James appeared on the policy statements as an excluded person. In April 1992, AAA refused a request to lift the exclusion because James still had two violations and was only 23 years of age. The endorsement was in effect at the time of the accident.

Rhonda brought a declaratory judgment action seeking a declaration that AAA was required to provide her with coverage pursuant to the underinsured provision of her policy. Both parties moved for summary judgment. The district court sustained the summary judgment motion made by AAA. In its order, the district court recognized a disagreement among other jurisdictions regarding whether named driver exclusions affecting uninsured or underinsured motorist coverage violate public policy. The district court noted that this court placed emphasis on allowing parties to freely enter into contracts and has held that a named driver exclusion affecting liability coverage does not violate public policy. See, e.g., *Equity Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Neb. 515, 209 N.W.2d 592 (1973). As a result, the district court concluded that the exclusion was valid, sustained AAA's motion for summary judgment, and denied Rhonda's motion for summary judgment. Rhonda appeals.

## ASSIGNMENTS OF ERROR

Rhonda asserts six assignments of error, the effect of which is to assign that the district court erred in sustaining AAA's motion for summary judgment and denying her motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law. *Neb. Account. & Disc. v. Citizens for Resp. Judges,* 256 Neb. 95, 588 N.W.2d 807 (1999).

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over all the motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Ferguson v. Union Pacific RR. Co.,* 258 Neb. 78, 601 N.W.2d 907 (1999).

■ The interpretation and construction of an insurance contract or policy involve questions of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Ferguson v. Union Pacific RR. Co., supra*; *Farm Bureau Ins. Co. v. Witte,* 256 Neb. 919, 594 N.W.2d 574 (1999).

## ANALYSIS

Rhonda contends that the exclusion at issue is void as against public policy because it acts to deny her of legislatively mandated insurance coverage pursuant to Neb. Rev. Stat. § 60-577 (Reissue 1993) which was in effect at the time of the collision. AAA counters that the ability to freely contract is valued by this court and that § 60-577 allowed an insured to reject uninsured or underinsured motorist coverage. Although we have previously held that a named driver exclusion that affects liability coverage does not violate public policy, we have not addressed whether such an exclusion is valid when it affects uninsured or

underinsured motorist coverage. See *Equity Mut. Ins. Co. v. Allstate Ins. Co., supra.*

The statutory provision in effect at the time of the accident provided: "Unless the named insured has in writing rejected underinsured motorist coverage, no policy insuring against liability . . . shall be delivered . . . unless coverage is provided for the protection of persons insured who are legally entitled to recover compensatory damages from the owner or operator of an underinsured motor vehicle . . . ." § 60-577(1). In 1994, the Legislature removed the reference to the ability of the insured to reject coverage in writing. See, 1994 Neb. Laws, L.B. 1074; Neb. Rev. Stat. § 44-6408 (Reissue 1998).

Parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999). Public policy is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, the principles under which the freedom of contract or private dealings are restricted by law for the good of the community. *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998).

Laws requiring uninsured or underinsured motorist coverage were enacted for the benefit of innocent victims of financially irresponsible motorists. *Id.*

A provision drawn by the insurer to comply with the statutory requirements of uninsured or underinsured motorist coverage must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. The purpose of the Uninsured and Underinsured Motorist Insurance Coverage Act is to give the same protection to a person injured by an uninsured or underinsured motorist as the person would have if he or she had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose.

*Allied Mut. Ins. Co. v. Allied Elec. Co.*, 256 Neb. at 697, 593 N.W.2d at 279. Accord, *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997); *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968). See, also, *State Farm v. Washington*, 641 A.2d 449 (Del. Super. 1994) (public policy requires that exclusions attempting to limit right of injured persons to uninsured or underinsured motorist coverage be narrowly construed).

Some jurisdictions have concluded that exclusions of named drivers affecting uninsured or underinsured motorist coverage are valid, often on the basis that uninsured or underinsured motorist coverage may be rejected in writing under the state's statutory scheme. See, e.g., *McCullough v. Standard Fire Ins. Co. of Ala.*, 404 So. 2d 637 (Ala. 1981); *Lopez v. Dairyland Ins. Co.*, 890 P.2d 192 (Colo. App. 1994); *Nationwide Mutual Insurance Company v. Miller*, 305 Md. 614, 505 A.2d 1338 (1986); *Moore v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 122, 888 P.2d 1004 (N.M. App. 1994); *O'Brien v. Dorrough*, 928 P.2d 322 (Okla. App. 1996).

However, other jurisdictions have found named driver exclusions of uninsured or underinsured coverage to violate public policy, even when the state statute allowed rejection of such coverage. See, *California Cas. Indem. Exch. v. Steven*, 5 Cal. App. 3d 304, 85 Cal. Rptr. 82 (1970); *State Farm v. Washington, supra*; *Atlanta Cas. Co. v. Payne*, 603 So. 2d 343 (Miss. 1992); *Thornton v. State Farm Mut. Auto. Ins. Co.*, No. 92-B-61, 1993 WL 327669 (Ohio App. Aug. 26, 1993).

In *State Farm v. Washington, supra*, the Superior Court of Delaware considered facts similar to those in the instant case. In reaching the conclusion that the named driver exclusion at issue violated public policy, the court stated:

> An auto insurer assumes two very different risks in terms of liability and uninsured/underinsured motorist coverages. In the first instance, the experience, driving record and negligence of the insured driver defines the risk to the insurer. In the latter, the risk is defined by the negligence of the public at large. Uninsured/underinsured motorist coverage protects those injured by negligent, financially irresponsible drivers. . . . It thus follows that [the insurer]

> assumes the same risk of the Son being hit by an unin-
> sured/underinsured motorist whether or not he is a passen-
> ger in an automobile, a pedestrian or a driver. Hence, deny-
> ing the Son underinsured motorist protection does not
> further the same purpose of excluding him from the
> Father's liability coverage.
>
> . . . .
>
> The Son was the innocent victim of another's negli-
> gence in the operation of a motor vehicle. That was the risk
> defined by the Father's uninsured/underinsured motorist
> coverage. It had nothing whatever to do with [the insurer's]
> enhanced *liability* exposure arising from the Son's negli-
> gence in the operation of an automobile.

*Id.* at 452. Thus, even though there is a valid and legitimate busi-
ness purpose in excluding from liability coverage a driver who
has a poor record, such a record has no relevance when the
excluded driver's actions are not the cause of the insured's
injuries. *Atlanta Cas. Co. v. Payne, supra.*

We find the reasoning of *Washington* and *Payne* persua-
sive. In the instant case, the excluded driver was excluded out of
concerns of an increased liability based on his record. However,
he was not the cause of the accident, was not operating Hood's
vehicle, and does not seek coverage under Hood's policy. Thus,
James' driving record had no effect on the collision in the instant
case or on the amount of coverage that AAA is being asked to
provide. Hood, on the other hand, purchased insurance to pro-
vide coverage in the event she was injured by the actions of an
uninsured or underinsured motorist, which is what happened in
the instant case. Laws regarding such coverage were enacted for
the benefit of the public. Thus, we will not apply a named driver
exclusion in a manner that will deny an insured party uninsured
or underinsured motorist coverage when the subject of the
exclusion was not responsible for the injury and is not seeking
coverage. Accordingly, we find the named driver exclusion in
this case to be void as against public policy, to the extent that it
denies Hood uninsured or underinsured motorist coverage. The
district court erred in granting AAA's motion for summary judg-
ment and in denying Hood's motion. Based on this conclusion,

the order of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED
FOR FURTHER PROCEEDINGS.

GERRARD, J., not participating.