AMERICAN FAMILY MUTUAL INSURANCE COMPANY, A WISCONSIN
CORPORATION, APPELLEE AND CROSS-APPELLANT, V.
RICHARD HADLEY AND NATALIE HADLEY, AND RICHARD HADLEY
AND NATALIE HADLEY, ON BEHALF OF RAINIER HADLEY,
A MINOR AND PROTECTED PERSON, APPELLANTS AND
CROSS-APPELLEES, AND LINDA HUGHES, APPELLEE.

648 N.W.2d 769

Filed July 26, 2002.    No. S-00-1092.

Terry M. Anderson and Gordon R. Hauptman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellants.

Michael G. Mullin, of McGrath, North, Mullin & Kratz, P.C., for appellee American Family Mutual Insurance Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

American Family Mutual Insurance Company (American Family) brought this declaratory judgment action against one of its policyholders and Richard Hadley and Natalie Hadley. In another action, the Hadleys have asserted a civil claim against the insured to recover damages for injuries sustained by their minor child, Rainier Hadley, while in her care. American Family sought a declaration that under the homeowner's and personal liability umbrella insurance policies it had issued to its insured, there was no duty to defend or indemnify her with respect to the Hadleys' suit. The Hadleys appeal from an order of the district court for Douglas County entering summary judgment in favor of American Family, based upon its determination that policy exclusions for damages arising out of violations of criminal law were applicable and enforceable.

## I. BACKGROUND

The insured provided childcare in her Omaha home for six minor children, the youngest of whom was Rainier, born on October 30, 1995. An American Family homeowner's policy and

an American Family personal liability umbrella policy, both issued to the insured, were in force and effect at all relevant times. On January 23, 1996, Rainier suffered severe injuries while under the insured's care. The insured subsequently contacted American Family to report a claim under the aforementioned insurance policies for the injuries to Rainier. American Family responded by letter, stating that it was investigating the claim under a full reservation of rights.

As a result of Rainier's injuries, the insured was charged with knowing and intentional child abuse under Neb. Rev. Stat. § 28-707(5) (Reissue 1995), a Class III felony. The insured subsequently pled guilty to an amended charge of negligent child abuse under § 28-707(3), a Class I misdemeanor.

On January 23, 1997, the Hadleys filed suit against the insured in the district court for Douglas County seeking damages for the injuries sustained by Rainier under a theory of assault and battery. The record also contains an amended petition in which the Hadleys allege a second cause of action for negligence, but this document does not bear a file stamp, and there is no other indication that it was ever filed. American Family hired counsel to defend the insured in the Hadleys' lawsuit under its previously stated reservation of rights.

On January 6, 1998, American Family filed this action seeking a declaration that it had no duty to defend the insured in the Hadleys' pending lawsuit and no duty to indemnify the insured for any claim arising from that lawsuit. In its petition, American Family alleged, inter alia, that the "violation of law" exclusions in the homeowner's and personal liability umbrella policies issued to the insured negated coverage for the claims made in the Hadleys' lawsuit. In their answer, the Hadleys specifically denied that coverage was excluded and, by counterclaim, sought a declaration that the policies provided coverage for the insured in their pending action against her. The insured also answered and alleged that the exclusions relied upon by American Family violated public policy insofar as they applied to her circumstances and further alleged that the Hadleys were not "necessary parties" to the declaratory judgment action and prayed that they be dismissed.

The district court entered an order sustaining American Family's motion for summary judgment on September 21, 2000. In a subsequent order nunc pro tunc, the district court reiterated the findings in its previous order and specifically found that American Family had no duty to defend the insured in the Hadleys' lawsuit and no duty to indemnify the insured for any claim arising from that lawsuit.

The Hadleys perfected this timely appeal. American Family cross-appealed on an evidentiary issue related to the summary judgment proceedings. The insured did not appeal. We removed the case to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. ASSIGNMENTS OF ERROR

The Hadleys assign, restated and consolidated, that the district court erred in concluding (1) that the exclusions in the insured's insurance policies applied to negate coverage in this situation and (2) that no genuine issues of material fact were raised concerning coverage under either policy. On cross-appeal, American Family assigns that the district court erred in overruling its objection to the affidavit of the insured, which was received over objection in the summary judgment proceedings.

## III. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Altaffer v. Majestic Roofing*, 263 Neb. 518, 641 N.W.2d 34 (2002); *Ohio Cas. Ins. Co. v. Carman Cartage Co.*, 262 Neb. 930, 636 N.W.2d 862 (2001).

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001); *Olsen v. Farm Bureau Ins. Co.*, 259 Neb. 329, 609 N.W.2d 664 (2000).

## IV. ANALYSIS

The issue before this court is whether insurance coverage for the claim which the Hadleys have asserted against the insured is excluded under the terms of the insurance policies issued by American Family to the insured. Familiar principles of contract interpretation form the framework for our analysis.

An insurance policy is a contract. *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). An insurance contract is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Ohio Cas. Ins. Co. v. Carman Cartage Co., supra; Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas.*, 253 Neb. 177, 569 N.W.2d 436 (1997). When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Ohio Cas. Ins. Co. v. Carman Cartage Co., supra; Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001). While an ambiguous insurance policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract. *Tighe v. Combined Ins. Co. of America, supra; Callahan v. Washington Nat. Ins. Co., supra.* Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute. *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000).

### 1. HOMEOWNER'S POLICY

The homeowner's policy issued to the insured includes an optional endorsement which extends liability coverage to an insured who provides home daycare service for which compensation is received. The policy provides that American Family "will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy." "Occurrence" is defined by the policy to mean "an accident, including exposure to

conditions, which results during the policy period, in: a. bodily injury; or b. property damage." The policy includes several exclusions from liability coverage, including the following: "17. Violation of Law. We will not cover bodily injury or property damage arising out of: a. violation of any criminal law for which any insured is convicted . . . ." The policy also includes exclusions for intentional acts and abuse which, along with the violation of law exclusion, were pled by American Family as grounds for its position that the Hadleys' claims against its insured are not covered under the policy. However, the motion for summary judgment was submitted to the district court solely on the violation of law exclusion. As a general rule, an appellate court disposes of a case on the theory presented in the district court. See, *Vejraska v. Pumphrey*, 241 Neb. 321, 488 N.W.2d 514 (1992); *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 426 N.W.2d 250 (1988). We do so here.

The Hadleys do not contend in this appeal that the language of the violation of law exclusion is ambiguous, and we conclude on the basis of our independent review that it is not. The plain meaning of the policy language clearly excludes coverage where the alleged liability of the insured is based upon conduct which is also the basis for a criminal conviction. Notably, courts from other jurisdictions have also held similar coverage exclusions in homeowner's insurance policies to be unambiguous. See, e.g., *Allstate Ins. Co. v. Brown*, 16 F.3d 222 (7th Cir. 1994); *Allstate Ins Co v Fick*, 226 Mich. App. 197, 572 N.W.2d 265 (1997); *Allstate Ins. Co. v. Peasley*, 131 Wash. 2d 420, 932 P.2d 1244 (1997); *Horace Mann Ins. v. Drury*, 213 Ga. App. 321, 445 S.E.2d 272 (1994); *Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001 (Ala. 1990).

Having concluded that the exclusion is unambiguous, we now turn to the question of whether it is applicable to the Hadleys' claim against the insured. On this point, the Hadleys raise four principal arguments. First, they argue that the record does not contain sufficient facts to make this determination as a matter of law. Second, they argue that the exclusion applies only to intentional criminal acts and not to criminal negligence. Third, they contend that application of the exclusion in this case would be contrary to the reasonable expectations of the insured at the time

she purchased the homeowner's policy. Finally, they contend that applying the exclusion in this case would be contrary to public policy. We address each of these arguments separately.

(a) Factual Sufficiency of Record

An insurer may petition a court to declare, pursuant to Neb. Rev. Stat. § 25-21,149 (Reissue 1995) of Nebraska's Uniform Declaratory Judgments Act, whether an insured's conduct or a specific event is excluded from coverage under a policy of insurance. *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999). See, also, *Columbia Nat. Ins. v. Pacesetter Homes*, 248 Neb. 1, 532 N.W.2d 1 (1995); *State Farm Fire & Cas. Co. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990). A court may not enter declaratory judgment where there is an unknown potential for liability to an insured and the declaratory judgment would not end the controversy between the parties, or where another equally serviceable remedy is available to the insurer. See, *Farm Bureau Ins. Co. v. Witte, supra; Medical Protective Co. v. Schrein*, 255 Neb. 24, 582 N.W.2d 286 (1998); *Ryder Truck Rental v. Rollins*, 246 Neb. 250, 518 N.W.2d 124 (1994). Where it is proved, however, that a specific event or type of conduct is beyond the terms of an insurance policy, a court may enter a declaratory judgment that the insurer is not obligated to provide coverage to the insured for the event or conduct. *Farm Bureau Ins. Co. v. Witte, supra.* See, also, *Columbia Nat. Ins. v. Pacesetter Homes, supra; State Farm Fire & Cas. Co. v. van Gorder, supra; State Farm Fire & Cas. Co. v. Victor*, 232 Neb. 942, 442 N.W.2d 880 (1989).

In this case, it is undisputed that the Hadleys' tort claim is based upon the same conduct for which the insured was convicted of the crime of negligent child abuse. The record includes a transcribed statement which the insured gave to police on January 24, 1996, the day following the incident. The insured admitted the accuracy of the statement in answers to requests for admission which are included in the record. In the statement, the insured admitted that she "flipped out" when Rainier was crying and refused to take a bottle and that she shook him and "forcibly threw him on the bed." When the infant developed symptoms of injury soon thereafter, she realized her responsibility and admitted to his

family that "I threw him on the bed." These undisputed facts provide a sufficient basis for determining whether the coverage exclusion is applicable.

### (b) Applicability to Criminal Negligence

The Hadleys' principal argument is that the policy exclusion applies only where the insured is convicted of a criminal offense requiring intent and does not apply to a conviction based upon criminal negligence. The offense of "child abuse" is defined by § 28-707, which is included within the Nebraska Criminal Code. See Neb. Rev. Stat. §§ 28-101 through 28-1348 (Reissue 1995). Section 28-707(1) provides:

> A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:
>
> (a) Placed in a situation that endangers his or her life or health; or
>
> (b) Cruelly confined or cruelly punished; or
>
> (c) Deprived of necessary food, clothing, shelter, or care.

When committed negligently, child abuse is a Class I misdemeanor, punishable by not more than 1 year's imprisonment, a $1,000 fine, or both. § 28-106(1). When committed intentionally, at the time of Rainier's injury, child abuse was a Class IB, III, or IV felony depending upon whether serious bodily injury or death results from the act and may be punishable by up to life imprisonment. See, § 28-707(4), (5), and (6); § 28-105. Thus, whether committed negligently or intentionally, child abuse is a crime.

The language of the homeowner's policy before us does not make a distinction between criminal acts requiring a specific intent and those which do not; it simply states that coverage is excluded for harm arising out of "[v]iolation of *any criminal law* for which any insured is convicted . . . ." (Emphasis supplied.) Affording this language its plain and ordinary meaning, as we must, it applies to any criminal conviction, whether or not the underlying offense includes an element of intent to cause injury. Other courts have reached the same conclusion with respect to similar policy language. For example, in *Horace Mann Ins. v. Drury*, 213 Ga. App. 321, 445 S.E.2d 272 (1994), the insured lit a firecracker and threw it out of a car window. It reentered the vehicle through a rear window, exploded, and

severely burned a passenger. The court held that there was no coverage under a homeowner's policy which excluded coverage for liability based on acts which constitute "a violation 'of any criminal law or statute.'" *Id.* at 322, 445 S.E.2d at 274. The court rejected the insured's contention that the exclusion should apply only to felonies of a serious nature, such as robbery and murder, reasoning that "crime" was generally understood to exclude violations of municipal ordinances and administrative regulations, but to include "all other violations of penal statutes, including misdemeanors." *Id.* The court reasoned that the exclusion in the homeowner's policy "can only reasonably be read to exclude injuries caused by illegal possession of fire-crackers." *Id.*

In *Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001 (Ala. 1990), the insured, who had been drinking, accidentally fired a shotgun while handing it to a friend visiting in his home as they were discussing a hunting trip, severely injuring the friend. The insured was originally charged with first degree assault and later pled guilty to second degree assault. The court held that the injured party's tort claim was not covered under the insured's home-owner's policy, which excluded liability for " 'criminal acts.' " *Id.* at 1003. Based upon the language of the exclusion, the court specifically rejected the insured's contention that it applied to only intentional criminal acts. Similarly, in *Allstate Ins Co v Fick*, 226 Mich. App. 197, 201, 572 N.W.2d 265, 267 (1998), the court held that an exclusion in a homeowner's policy stating that there was no coverage for bodily injury resulting from " 'a crim-inal act or omission' " applied in the circumstance where the insured unlawfully obtained a prescription drug from her employer and gave it to a friend, who died from an adverse reac-tion. Affirming a judgment that the exclusion applied whether or not the harm which resulted from the criminal act was actually intended, the Michigan Court of Appeals reasoned that because there was no dispute that the insured had committed a criminal act in obtaining the medication, the homeowner's policy did not provide coverage for a wrongful death action brought against the insured. See, also, *Allstate Ins. Co. v. Sowers*, 97 Or. App. 658, 776 P.2d 1322 (1989) (holding criminal acts exclusion in

homeowner's policy applicable where insured unintentionally injured police officer while unlawfully resisting arrest).

Our conclusion that the violation of law exclusion in the homeowner's policy is not limited to specific intent crimes is also based on the fact that the policy includes a separately numbered and stated exclusion of coverage for injury or damage "caused intentionally by or at the direction of any insured even if the actual bodily injury . . . is different than that which was expected or intended from the standpoint of any insured." The fact that "criminal" acts and "intentional" acts are enumerated as separate and distinct exclusions, considered in conjunction with the fact that the criminal acts exclusion contains no language regarding intent, leads logically to the conclusion that coverage for injury or damage arising from criminal acts is excluded regardless of the actor's intent. See *Liebenstein v. Allstate Ins. Co.*, 517 N.W.2d 73 (Minn. App. 1994). Compare *Young v. Brown*, 658 So. 2d 750, 752 (La. App. 1995) (holding exclusion for injuries " 'which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person' " to be ambiguous and therefore susceptible to construction in favor of insured).

### (c) Reasonable Expectations of Insured

Next, the Hadleys contend that application of the "violation of law" exclusion to negate coverage for negligent child abuse defeats the insured's reasonable expectations with respect to her homeowner's insurance. Although the insured did not appeal from the district court's judgment, the Hadleys rely upon the affidavit she offered in opposition to American Family's motion for summary judgment in which she averred that she "purchased the homeowner's policy and the umbrella policy for the specific purpose of providing coverage for bodily injury and property injury that may occur as a result of negligence or inadvertence." Relying on *Tower Ins. Co., Inc. v. Judge*, 840 F. Supp. 679 (D. Minn. 1993) (applying Minnesota law), and *Young v. Brown*, *supra*, the Hadleys argue that this court should construe the exclusion in accordance with the reasonable expectations of the insured and thus provide coverage for the consequences of actions which may constitute a violation of the criminal code but are nevertheless negligent in nature.

However, we need not consider the law of other states on this point because this court has recently stated that

the reasonable expectations of an insured are not assessed *unless the language of the insurance policy is found to be ambiguous*. When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them.

(Emphasis supplied.) *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 757, 635 N.W.2d 112, 120 (2001). See, also, *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997). Because we have concluded that the exclusion in the homeowner's policy is unambiguous, we do not take into consideration whether application of the exclusion to the facts of this case would be consistent with the reasonable expectations of the insured who purchased the policy with knowledge of it content.

### (d) Public Policy

Finally, the Hadleys argue that reading the exclusion to include negligently committed criminal acts would violate public policy because it would allow an injured child to go uncompensated. They contend that the homeowner's policy was actually a "business liability policy" because the insured operated a childcare business in her home. Brief for appellant at 21. The Hadleys further argue that "[t]he state clearly has an interest in providing a source of compensation for children injured by childcare providers, particularly where those injuries occur as a result of conduct as to which no public policy prohibits such a source of compensation." *Id.*

As noted, an insurer may restrict its liability under a contract of insurance if the restriction is not inconsistent with public policy. *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 607 N.W.2d 814 (2000). Public policy is that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, the principles under which the freedom of contract or private dealings are restricted by law for the good of the community. *Hood v. AAA Motor Club Ins. Assn., supra; Ploen v. Union Ins. Co.*, 253 Neb.

867, 573 N.W.2d 436 (1998). The determination of whether a contract violates public policy presents a question of law. *Ploen v. Union Ins. Co., supra.*

The Hadleys have identified no statute or regulation which would preclude an insurer from issuing a homeowner's policy to a home childcare provider that excluded coverage for child abuse, whether negligent or intentional. Indeed, we have been directed to no legal requirement that a home childcare provider must have liability insurance in force. As a general rule, the majority of courts that have addressed the issue hold that a provision in a homeowner's policy which excludes coverage for claims arising from criminal acts, whether committed intentionally or not, does not violate public policy. See, e.g., *Allstate Ins. Co. v. Burrough*, 914 F. Supp. 308 (W.D. Ark. 1996) (holding exclusion in homeowner's policy which applied to all criminal acts, regardless of mens rea required for their commission, did not violate public policy of Arkansas law); *Allstate Ins. Co. v. Norris*, 795 F. Supp. 272, 275 (S.D. Ind. 1992) (holding exclusion in homeowner's policy negating coverage for "any 'criminal act or omission' " both applied to unintentional criminal acts and did not violate public policy); *Allstate Ins. Co. v. Peasley*, 131 Wash. 2d 420, 932 P.2d 1244 (1997) (holding exclusion of coverage for injuries resulting from unintentional criminal acts of insured, such as reckless endangerment, did not violate public policy); *Horace Mann Ins. v. Drury*, 213 Ga. App. 321, 322, 445 S.E.2d 272, 274 (1994) (holding exclusion in homeowner's policy for claims arising from insured's "violation 'of any criminal law or statute' " applied to accidental injury resulting from unlawful possession of fireworks, and did not violate public policy); *Hooper v. Allstate Ins. Co.*, 571 So. 2d 1001, 1002 (Ala. 1990) (holding exclusion in homeowner's policy for " 'intentional or criminal acts of an insured' " extended to all criminal acts, whether or not insured intended to commit act or to cause harm, and did not contravene public policy); *Allstate Ins. Co. v. Schmitt*, 238 N.J. Super. 619, 623, 570 A.2d 488, 490 (1990) (holding exclusion in homeowner's policy for " 'intentional or criminal acts' " applied to unintended result of criminally reckless conduct and did not offend public policy).

The Hadleys rely on *Young v. Brown*, 658 So. 2d 750 (La. App. 1995) for the contrary position. In that case, the court considered

a homeowner's policy provision excluding coverage for " 'any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.' " *Id.* at 752. The issue was whether this provision excluded coverage for an accidental shooting in which the insured was convicted of "negligent injuring" under Louisiana law. *Id.* The court found the exclusion to be ambiguous and further stated that it would violate Louisiana's "public policy established for the protection of innocent injury victims." *Id.* at 754. We do not find this case persuasive. It involves different policy language that, unlike the language at issue here, the court found to be ambiguous. Given this finding of ambiguity, the *Young* court's statement regarding public policy appears to be dictum.

The issue is not whether public policy favors compensation of crime victims, but whether public policy *requires* an insurer to indemnify the insured for the consequences of his or her criminal behavior, notwithstanding a provision in the policy that such coverage is not provided. We limit our analysis of this question to the specific facts presented in this case. The record does not demonstrate that the homeowner's policy, including the extended endorsement for operation of a home daycare service, is insurance which is mandated by law. The violation of law exclusion does not apply unless the insured has been convicted of a criminal act. The insured was convicted of a crime which involves placing a child in a situation that endangers his or her life or health; cruelly confining or punishing a child; or depriving a child of necessary food, clothing, shelter, or care. See § 28-707(1). The Legislature has determined, as a matter of public policy, that such conduct is a crime whether committed knowingly, intentionally, or negligently. *Id.* It is undisputed that the alleged civil liability of the insured is based upon the same conduct that formed the factual basis for her criminal conviction. That conduct consisted of shaking a fussy infant and then forcibly throwing him on a bed. Regardless of whether harm is subjectively intended, such conduct has no innocent purpose. See *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999). Where, as here, an insurer has unambiguously stated in the contract of insurance that it will not provide coverage for

injury arising out of a violation of criminal law for which the insured has been convicted, we can discern no public policy which would require abrogation of that contractual provision under the facts of this case.

## 2. PERSONAL UMBRELLA POLICY

The personal liability umbrella policy at issue in this case contained various exclusions, including the following: "23. Violation of Law. We will not cover injury arising out of violation of a penal law or ordinance by or with the knowledge or consent of an insured when an insured is convicted of such violation." The umbrella policy states that it will cover the insured's provision of a "child home day care service" if the insured has applicable underlying coverage, but further provides that any coverage provided for such activity "will be no broader than the underlying insurance."

The Hadleys argue that the violation of law exclusion in the umbrella policy is ambiguous because of its reference to the term " 'penal' law" and its inclusion of the phrase " 'by or with the knowledge or consent of an insured.' " Brief for appellant at 19. With respect to the term " 'penal' law," the Hadleys suggest that "[i]t is doubtful a man or woman purchasing childcare liability insurance would understand 'penal' to mean any criminal law." Id. We disagree. The word "penal" is defined as "of, pertaining to, or involving punishment, as for crimes or offenses." Webster's Encyclopedic Unabridged Dictionary of the English Language 1065 (1994). Therefore, "penal law" is synonymous with "criminal law" and is both easily understandable and unambiguous. Regarding the phrase "by or with the knowledge or consent of an insured," the Hadleys argue that this phrase is confusing to the average reader. Again, we disagree. When read in its ordinary grammatical context, the phrase simply modifies the words "violation of a penal law or ordinance" and thus defines the scope of the exclusion to include offenses actually committed by an insured, as well as those, for example, to which an insured is convicted of aiding, abetting, or conspiring with the actual perpetrator.

As for its application, the "violation of law" exclusion found in the umbrella policy, like the "violation of law" exclusion found in

the homeowner's policy, does not contain language narrowing its scope to intentional violations. The intentional acts exclusion in the umbrella policy is separately stated and numbered and specifically excludes coverage for intentional acts that are "fraudulent, criminal or malicious." If the "violation of law" exclusion were read narrowly to include only intentional violations of a penal law, it would be redundant with the intentional acts exclusion. Therefore, when viewed as a whole, we conclude that the umbrella policy unambiguously excludes coverage for an injury arising out of conduct for which the insured was convicted of negligent child abuse. Furthermore, and for the reasons discussed with respect to the homeowner's policy, we also conclude that this exclusion is not contrary to public policy and may therefore be enforced by the insurer.

## V. CONCLUSION

The "violation of law" exclusions set forth in both insurance policies issued by American Family are unambiguous and include within their scope the conduct of the insured upon which the Hadleys' claim is based. Neither exclusion contravenes public policy. Based upon our independent review of these issues, we conclude that the district court did not err in granting American Family's motion for summary judgment, and we affirm. Because of this disposition, we need not reach the issue raised by the cross-appeal.

AFFIRMED.

HENDRY, C.J., concurring.

I concur with the result reached by the majority. However, I write separately as I believe it unnecessary to decide this case on the violation of law exclusion. In my view, the intentional acts exclusion excludes coverage. I therefore reserve judgment on whether the violation of law exclusion violates the public policy of Nebraska. While the majority notes that the violation of law exclusion was the sole basis argued by American Family in the hearing on the motion for summary judgment, the motion for summary judgment contains no such limitation, stating only that American Family was entitled to judgment as a matter of law. In addition, the intentional acts exclusion was pled by American Family in its operative petition in the district court as one of the

bases for declaring there was no coverage. Finally, American Family argues in its brief that the insured's actions were "intentional." Brief for appellee at 29.

The policy at issue states in pertinent part: "10. Intentional Injury. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any insured." A similar exclusion is contained in the umbrella policy.

American Family offered the insured's statement at the hearing on the motion for summary judgment. This statement was taken by police on January 24, 1996, the day after Rainier was injured, and received by the court as exhibit 6. In this statement, the insured said:

A. . . . [A]nd I . . . and I'm looking at him in the eye and I'm going, what am I doing wrong. Why won't you take the bottle? Why won't you burp? What's going on?

Q. . . . [Y]ou were shaking him?

A. . . . [N]ot violently, like that. I was you know . . . .

Q. . . . [B]ut shaking[?]

A. . . . [J]iggling him.

Q. Okay.

A. Now why won't you take this bottle. You know. And I . . . I could see myself getting' [sic] real tense and I thought, okay, LINDA, calm down and I . . . you know, put him on the bed.

Q. Okay, you told me earlier you had . . .

A. . . . [Y]ou know, forcibly threw him on the bed. But I mean it wasn't like I threw him up in the air. I didn't do that.

Q. But you forcibly threw him down on the bed? Is that correct?

A. Yeah . . . .

Together with the statement, the insured's answers to requests for admission were also received at the summary judgment hearing. In these answers, the insured admitted: "Exhibit [6] accurately sets forth your responses to each of the questions asked of you by Officer Mailander during the statement given by you on January 24, 1996." No evidence was offered at the summary judgment hearing that the insured was incapable of

formulating the intent to shake Rainier or forcibly throw him on the bed, or that the insured was incapable of understanding the nature of her acts.

I recognize that in these same requests for admission the insured also denied that she "intentionally shook" or "forcibly threw Rainier Hadley down on a bed on January 23, 1996." However, " ' " " [w]here a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded.' " ' " *Neill v. Hemphill*, 258 Neb. 949, 954, 607 N.W.2d 500, 504 (2000), quoting *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981). I would therefore disregard the inconsistent denials.

In my view, the record is undisputed that the insured shook Rainier and threw him on the bed. Based on the policy's intentional acts exclusion, there is no coverage. See, *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999); *Columbia Nat. Ins. v. Pacesetter Homes*, 248 Neb. 1, 532 N.W.2d 1 (1995). I would therefore affirm the district court's decision, albeit on other grounds. The majority's decision to do otherwise, in my view, is not compelled by this record. Furthermore, the majority's holding that the violation of law exclusion does not offend Nebraska's public policy is troubling for several reasons.

The plain language of the violation of law exclusion permits the denial of coverage upon the conviction of the insured. I have found no other court which has been called upon to interpret the specific exclusionary language utilized in these policies. While the majority concludes, based in part on the conduct of the insured in this case, that such exclusions are not violative of public policy, under the plain language of the exclusion the insured's underlying conduct *plays no part* in determining the applicability of the exclusion. The conviction is the sole determinative factor.

I agree the trend regarding "criminal acts" exclusions follows the reasoning that public policy is not offended when a homeowner's liability policy excludes coverage for reckless, as well as intentional, criminal acts. See *Allstate Ins. Co. v. Peasley*, 131 Wash. 2d 420, 932 P.2d 1244 (1997). However, as noted in *Swift*

*v. Fitchburg Mut. Ins. Co.*, 45 Mass. App. 617, 627, 700 N.E.2d 288, 295 (1998):

> In situations where the offense of which the insured was guilty verges toward the unintentional—say criminal negligence or recklessness—courts might possibly hesitate about holding that the criminal acts exclusion applies, for here the historic justification for the exclusion falters. See *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 46-47, 571 N.Y.S.2d 429, 574 N.E.2d 1035 (1991); *Tower Ins. Co. v. Judge*, 840 F.Supp. 679, 692-693 (D.Minn.1993); *Young v. Brown*, 658 So.2d 750, 753-754 (La.Ct.App. 1995).

In *Swift*, the insured was not convicted of an intentional or even a reckless violation of the criminal law, but, rather, a negligent one.

The majority assumes in its analysis that the term "criminal act" as used in the cases cited in support of its conclusion is synonymous with the terms "violation of any criminal law" and "violation of a penal law or ordinance" used in the policy exclusions at issue in this case. The problem with trying to equate the category of "criminal act" with the category of "any conviction for violation of a criminal law or ordinance" was highlighted in *Allstate Ins. Co. v. Raynor*, 93 Wash. App. 484, 969 P.2d 510 (1999). In *Raynor*, the insured shot and killed his neighbor and her daughter. He then killed himself. The court held that the insured's actions constituted criminal acts. Therefore, the victims' estates could not recover against the insured's homeowner's policy, which excluded coverage for " 'bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured.' " *Id.* at 492, 969 P.2d at 515. The court nonetheless stated in a footnote:

> We do not hold, however, that every violation of a Washington criminal statute will constitute a "criminal" act releasing an insurer from liability for an insured's act or omission. As noted in *Peasley*, 131 Wn.2d at 434-36 (Madsen, J., concurring), some violations of criminal statutes would certainly not be contemplated by the average purchaser of insurance as precluding coverage under a "criminal acts" exclusion in a homeowners policy. But [the insured]'s actions here were so extreme as to constitute

clearly excluded "criminal acts" in the minds of an average purchaser of insurance.

93 Wash. App. at 496 n.10, 969 P.2d at 516 n.10.

I agree with the Washington Court of Appeals. The breadth of the majority's holding with respect to this exclusion would cause me to "hesitate." See *Swift*, 45 Mass. App. at 628, 700 N.E.2d at 295.

Under its plain meaning, this policy excludes coverage for any acts committed by the insured, if the insured is convicted of violating any "criminal" law, "penal" law, or "ordinance" in connection with the incident. The problem with such broad exclusionary language was addressed in *Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 28 P.3d 889, 110 Cal. Rptr. 2d 844 (2001). In that case, the policy excluded coverage for bodily injury " 'arising out of any *illegal act* committed by or at the direction of an insured.' " *Id.* at 763, 28 P.3d at 893, 110 Cal. Rptr. 2d at 848. The court concluded that this exclusion was too broad, reasoning that

> the homeowners policy that the insureds here bought from Safeco expressly provided that Safeco would defend and indemnify them for bodily injury caused by "an occurrence," which the policy defines as "an accident . . . which results, during the policy period, in bodily injury or property damage." Because the term "accident" is more comprehensive than the term "negligence" and thus includes negligence (Black's Law Dict[ionary 14 (5th ed. 1979)], Safeco's homeowners policy promised coverage for liability resulting from the insured's negligent acts. That promise would be rendered illusory if, as discussed above, we were to construe the phrase "illegal act," as contained in the policy's exclusionary clause, to mean violation of any law, whether criminal or civil.

*Safeco Ins. Co. of America*, 26 Cal. 4th at 764-65, 28 P.3d at 894, 110 Cal. Rptr. 2d at 850.

Applying this reasoning, the *Safeco* court refused to apply the illegal act exclusion. The court held that because "the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid." *Id.* at 766, 28 P.2d at 895, 110 Cal. Rptr. at 852. Nebraska has a

similar definition of the term "accident." See *City of Kimball v. St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 154, 206 N.W.2d 632, 634 (1973) ("[t]he word 'accident' as used in liability insurance is a more comprehensive term than 'negligence' and in its common signification the word means an unexpected happening without intention"). See, also, *Columbia Nat. Ins. v. Pacesetter Homes, Inc.*, 248 Neb. 1, 532 N.W.2d 1 (1995); *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 317 N.W.2d 375 (1982).

The majority's holding would, in my view, exclude from coverage situations "for which people classically seek insurance coverage." See *Tower Ins. Co., Inc. v. Judge*, 840 F. Supp. 679, 693 (D. Minn. 1993). *Tower Ins. Co., Inc.* involved a homeowner's insurance policy which excluded coverage for bodily injury which " 'result[s] from the criminal acts of an insured.' " 840 F. Supp. at 683. The insured accidentally electrocuted a friend while attempting to play a practical joke. The insurer asserted that there was no coverage because the insured's actions constituted a criminal act. The court found that the criminal act exclusion violated public policy, noting:

> The court is convinced that it would be bad policy to find that the exclusion applies in this case just because the state of Wisconsin decided to pursue criminal charges. . . . Persons who suffer unintended and unexpected injuries should not be denied compensation because of such a discretionary decision by the state.

*Id.* at 693. The concern recognized in *Tower Ins. Co., Inc., supra*, is even greater here, wherein the exclusionary language of the policy is applicable to *any* conviction.

Under the majority's holding, one can foresee "accidents" involving a child who is injured by placing his or her hand on a hot heat register, falling out of a swing, or accidentally pulling over a bookcase while playing. These are the types of accidents for which a daycare provider would typically purchase insurance to both protect themselves and provide compensation for the innocent child. In each of the above "accidents," there is no conduct by the daycare provider which fits into the traditional concept of a "criminal act." However, if the daycare provider is convicted of negligent child abuse, then the insured has committed a violation of law under the terms of this policy. There is

no room to debate whether the daycare provider committed a criminal act, intentional or otherwise. There will be no coverage. The conviction is all that is needed.

Another concern which would cause me to hesitate is that under this exclusion, the insured would not know, and could not know at the time of entering into the contract, what "accidents" would be covered under the insurance policy. That determination could be made only after the fact, depending on whether any conviction arises in connection with an occurrence for which coverage is sought. See *Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 28 P.3d 889, 110 Cal. Rptr. 2d 844 (2001).

Neb. Rev. Stat. § 44-102 (Reissue 1998) defines an insurance policy as

> a contract whereby one party, called the insurer, for a consideration, undertakes to pay money or its equivalent or to do an act valuable to another party, called the insured, or to his or her beneficiary, upon the happening of the hazard or peril insured against whereby the party insured or his or her beneficiary suffers loss or injury.

The violation of law exclusion as interpreted by the majority would in effect make coverage dependent not on the "happening of the hazard or peril insured against," but on the discretionary decision of a prosecuting attorney. See, *Tower Ins. Co., Inc. v. Judge*, 840 F. Supp. 679 (D. Minn. 1993); *Safeco Ins. Co. of America, supra.* Under such exclusions, two identical "accidents" may or may not be covered under two identical policies, depending on how aggressively the prosecuting authority responds to the incident. This occurs notwithstanding the fact that each insured paid the same premium for the identical contract.

Accordingly, I reserve judgment on the enforceability of the violation of law exclusion contained in this policy. Such exclusions could exclude from coverage those occurrences for which people classically seek coverage, see *Tower Ins. Co., Inc., supra*, and render the insurance contract illusory. See *Safeco Ins. Co. of America, supra.*

GERRARD and MCCORMACK, JJ., join in this concurrence.